Edell PLUMMER, Hayward Rose, Josef J. Eggleston, Ivor Taylor, and Alberto Viera, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

CHICAGO JOURNEYMAN PLUMBERS' LOCAL UNION NO. 130, U. A., Plumbing Contractors Association of Chicago and Cook County, and the Joint Apprenticeship Committee, Local No. 130, U.S.A., Defendants.

No. 77 C 1726.

United States District Court,
N. D. Illinois, E. D.

April 21, 1978.

Supplemental Memorandum July 24, 1978.

1128

Judson H. Miner, Charles Barnhill, Jr., Chicago, Ill., for plaintiffs.

James R. Gannon and Leonard Goslawski, Lewis, Overbeck & Furman, Chicago, Ill., for Joint Apprenticeship Committee.

Howard Barron and William Snapp, Jenner & Block, Chicago, Ill., for Plumbing Contractors Ass'n.

Julian Schreiber, Borovsky, Smetana, Ehrlich & Kronenberg, Chicago, Ill., for Local No. 130.

Marvin Gittler, Asher, Greenfield, Goodstein, Pavalon & Segall, Chicago, Ill., for International Union.

## MEMORANDUM AND ORDER

ROBSON, Senior District Judge.

This cause is before the court on defendants' motions to dismiss and for a more definite statement. For the reasons hereinafter stated, the motions to dismiss are granted in part and denied in part, and the motions for a more definite statement are denied.

This action is brought pursuant to the Civil Rights Act of 1870, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* [hereinafter Title VII]. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e–5(f)(1). This is a suit for relief from alleged discriminatory employment practices which are claimed to preclude blacks and hispanics from access to employment in the plumbing industry.

Pursuant to Rule 23(a) and (b)(2) of the Fed.R.Civ.P., plaintiffs have sued on behalf of themselves and all other persons similarly situated. They seek to represent a class consisting of "all Negroes and Hispanics who have been denied training and employment in the plumbing industry because of their race or national origin." Second Amended Complaint at ¶ 5. The named plaintiffs are Edell Plummer, Hayward Rose, Josef J. Eggleston, Ivor Taylor, and Alberto Viera. The named defendants are Chicago Journeyman Plumbers' Local Union No. 130, U.A. [hereinafter Local 130], the Plumbing Contractors Association of Chicago and Cook County [hereinafter PCA], the Joint Apprenticeship Committee, Local 130, U.A. [hereinafter JAC], and the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry in the United States and Canada [hereinafter the International Union]. The International Union was dismissed on March 17, 1978, pursuant to stipulation of the parties, as it was not an indispensable party to these proceedings.

The defendants have filed motions to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

They also have filed separate motions seeking a more definite statement. The court will first consider the motions to dismiss.

## TITLE VII CLAIMS

A jurisdictional prerequisite to the filing of a Title VII action in district court is that a timely charge has been filed with the Equal Employment Opportunity Commission [hereinafter EEOC]. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Here, multiple plaintiffs name some but not all of the multiple defendants in their EEOC charges. For the plaintiffs to have a Title VII claim against a defendant, at least one of the plaintiffs must satisfy all of the jurisdictional prerequisites to a· Title VII action against a defendant in order for this court to have subject matter jurisdiction over that defendant.

Plaintiffs Edell Plummer, Josef Eggleston, Hayward Rose, Alberto Viera, and Ivor Taylor have all named Local 130 in their EEOC charges. Viera, Rose, and Taylor have named PCA in their EEOC charges. Rose has named JAC in a charge. Although each of the defendants has been charged by at least one of the named plaintiffs, defendants challenge the use of these charges against them on grounds of lack of subject matter jurisdiction for failure to satisfy jurisdictional prerequisites. They further challenge some of plaintiffs' allegations for failure to state a claim under Title VII.

## JAC

Defendant JAC argues that the Title VII claims of all the plaintiffs must be dismissed against it because no plaintiff named it in a timely charge to the EEOC. Plaintiffs respond that a claim is adequately stated against JAC under Title VII.

Hayward Rose is the only plaintiff who has named JAC in a charge before the EEOC. Rose first filed a charge with the EEOC on October 28, 1975, complaining against Local 130 for the refusal to hire him as an apprentice or journeyman plumber. He alleged that the most recent discrimina-

tion occurred on August 21, 1975. Rose later filed two separate charges with the EEOC on March 9, 1977, complaining against Local 130, PCA, JAC, and the International Union with exactly the same allegations as his earlier charge. He again alleged that the most recent discrimination occurred on August 21, 1975. JAC argues that the later charges filed by Rose are untimely and thus are not grounds for a Title VII claim against it. The issue is whether Rose's initial charge identified JAC or whether the later charges related back to the initial charge so that JAC is properly before the court under Title VII.

An EEOC charge must be filed under 42 U.S.C. § 2000e–5(e) within 180 days of the alleged violation. This Title VII statute of limitations bars consideration by a court of discriminatory acts not made the basis of a timely charge. *United Airlines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Moore v. Sunbeam Corp.,* 459 F.2d 811, 821 (7th Cir. 1972). As Rose's later charges refer to the most recent act of discrimination as occurring on August 21, 1975, more than 180 days have elapsed from the alleged violation to the filing of these charges. Thus, these charges do not provide a basis for this Title VII complaint. Moreover, the parties named therein, JAC and PCA, cannot be subject to a Title VII complaint based on these charges.

Nonetheless, plaintiff argues that: first, defendant JAC was identified in the first charge so that the correction of its name in the amended charge was a clarification that relates back to the initial date of filing; second, defendant JAC was an agent of defendants Local 130 and PCA so that it could be sued regardless of whether it had been named in a charge; third, if there was no relation back of the later charges to the first charge, the later charges were still timely as Rose's charge was of a continuing nature; and, fourth, defendant JAC should be kept in the Title VII aspects of this lawsuit as a necessary party under Fed.R. Civ.P. 19. For the reasons hereinafter stated, each of these arguments must fail.

Plaintiffs contend that Rose's initial charge focused directly on the plumber's apprenticeship program naming only Local 130 as Rose knew of no distinction between the apprenticeship program and Local 130. Only later did Rose learn that the apprenticeship program is administered by JAC and that JAC is controlled by a board with an equal number of members from Local. 130 and PCA. At that point, seventeen months after the filing of his charge, Rose amended his charge to name the administrator of the apprenticeship program already identified in the initial charge. Thus, he amplified his initial charge. Defendant JAC states that the "amendment" of Rose's charge, seventeen months after his initial charge and just prior to the initiation of this lawsuit, gave it no notice of an alleged violation until long after August, 1975, when Rose claims that the discrimination occurred. This after-the-fact amendment does not relate back to the date of initial filing and completely avoids the goals of reconciliation and voluntary compliance required by Congress. *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711 (7th Cir. 1969) [hereinafter *Bowe*].

A Title VII action may only be brought against "any respondent . . . named in the charge." 42 U.S.C. § 2000e–5(f)(1). This section establishes a jurisdictional prerequisite to the filing of a Title VII action. *Bowe, supra* at 719. Satisfaction of this jurisdictional prerequisite serves to notify a charged party of the asserted violation and to bring the charged party before the EEOC so as to promote Title VII's primary goal of securing voluntary compliance. *Id.*

Although Title VII does not provide for any amendment of charges of discrimination, EEOC regulations provide at 29 C.F.R. § 1601.11 that:

A charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments alleging additional acts which constitute unlawful employment

practices directly related to or growing out of the subject matter of the original charge will relate back to the original filing date.

The EEOC regulation allows curing technical defects such as the filing of verified charges after the expiration of the statutory time period for filing where unverified charges have been filed within the time period, *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355, 357 (6th Cir. 1969), or making a more detailed description of the claims of discrimination than those set forth in the timely charge, *EEOC v. Western Publishing Co.,* 502 F.2d 599, 603 (8th Cir. 1974). The regulation does not allow the naming of a new party in an untimely charge to relate back to the date of filing of the original charge. *Landry v. Chicago, Rock Island & Pacific Railroad Co.,* 8 FEP Cases 498, 500–01 (N.D.Ill.1974). Rose's later charges do not relate back because 42 U.S.C. § 2000e–5(e) provides a mandatory limitation period within which a charge must be filed against a respondent to the charge. *Kennar v. North American Rockwell Corp.,* 9 Empl. Prac.Dec. § 9992, at 7136 (C.D.Cal.1974).

■ Plaintiffs state that an exception to the requirement that Title VII actions can only be maintained against parties named in the EEOC charge exists for agents of named parties. They further allege that JAC is an agent of Local 130 and PCA, so that the naming of Local 130 in Rose's timely charge precludes the need to have even named JAC in an EEOC charge. JAC responds that the complaint's allegation is the only indication that JAC is an agent of Local 130. Thus, no substantial identity exists between these defendants for the agency theory to be applicable here. Moreover, plaintiffs' agency argument ignores the well-established authorities in the Seventh Circuit that no party can be a subject of a Title VII suit, unless it has been previously named in a timely EEOC charge.

In *Butler v. Local No. 4,* 308 F.Supp. 528, 531 (N.D.Ill.1969), the court held that the Title VII definition of a labor organization, while including its agents, 42 U.S.C. § 2000e(d), does not make an agent a "respondent" within the meaning of 42 U.S.C. § 2000e–5(f)(1) so as to make the filing of a charge naming the agent unnecessary. Thus, the court dismissed the Title VII action against the agent of a labor organization. Although the court stated that the situation may be different when a substantial identity exists between the parties, JAC and Local 130 are not substantially identical. Local 130, the respondent named in Rose's timely charge, had its members holding only half of the positions on JAC's board with the plumbing contractors holding the other half of the positions. A joint labor-management organization, like the JAC, will not here be held to be substantially identical to the labor organization alone.

■ Moreover, plaintiffs would still have to show that Rose's timely charge not only gave JAC notice of a charge against it but also gave it the opportunity to participate in EEOC conciliation proceedings which the naming in a charge provides. *Williams v. General Foods Corp.,* 492 F.2d 399, 405 (7th Cir. 1974); *Bernstein v. National Liberty International Corp.,* 407 F.Supp. 709, 716 (E.D.Pa.1976). As the naming of a party in a timely filed EEOC charge is a jurisdictional prerequisite to a Title VII action, plaintiffs could have submitted exhibits or affidavits, as was done to show that other prerequisites were fulfilled, showing that JAC not only knew of the charges but also had the opportunity to participate in the EEOC conciliation procedures. Plaintiffs have not shown either. Thus, JAC cannot be the subject of this Title VII proceeding on an agency theory.

Plaintiffs cite *Hairston v. McLean Trucking Co.,* 62 F.R.D. 642, 661 (M.D.N.C.1974), *vacated on other grounds,* 520 F.2d 226 (4th Cir. 1975), in support of their proposition that agents need not be named in an EEOC charge if a timely charge is filed against the principal. The court there decided that a wholly-owned subsidiary not formally charged in the plaintiffs' EEOC complaints was properly before the court where the corporate parent was charged, where one of the plaintiffs had written in his complaint that he was an employee of both the parent

and the subsidiary, and where the EEOC actually investigated the subsidiary. The facts of *Hairston, supra,* are inapposite to the case at bar. First, JAC as a joint labor-management committee was not wholly-controlled by Local 130, the only respondent charged in Rose's timely charge. Second, although plaintiff Rose's charge referred to apprenticeship programs, there is no indication that the EEOC actually investigated JAC as a result of Rose's charge naming only Local 130. In addition, the court in *Hairston, supra* at 661–62, stated that its result may have been different if the subsidiary had not been previously dismissed as to section 1981 violations. Here, as discussed *infra,* JAC remains as a defendant under plaintiffs' section 1981 action.

Plaintiffs further argue that because Rose's charge of a refusal to hire is a continuing wrong, the later charges were timely against the parties named therein including JAC and PCA. As plaintiffs only addressed this argument in its supplemental memorandum in response to the International Union's position, defendant JAC did not respond to it. The court will nevertheless respond to plaintiffs' argument, and finds it without merit.

The continuing wrong doctrine has been used to modify the time limitations within which to file a Title VII action until the facts supporting the charge of discrimination would or should have been known to an aggrieved individual. *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 474 (D.C.Cir. 1976). Adding a new party after timely charges have been filed against another party for the same alleged discrimination is far different from the practice of using the continuing wrong doctrine to extend time limitations to a plaintiff experiencing the present effects of past discrimination. Adding a new party undermines the notice and conciliation aspects of the Title VII statute of limitations in regard to the new party. *See Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1234 (8th Cir. 1975) (en banc).

The alleged violation was recognized by Rose when he filed a timely EEOC charge in October of 1975. In March of 1977, when Rose filed his later charges naming JAC as an additional party, no new violation had occurred. Rose stated in his later charges that the last discrimination occurred in August of 1975.

In *Bowe, supra* at 719, although a union was not entirely blameless in permitting discrimination to exist and could have worked harder to eliminate the continuing effects of prior discrimination, the failure to charge the union before the EEOC resulted in the dismissal of the union in a Title VII action. In *Wallace v. International Paper Co.,* 426 F.Supp. 352, 354–57 (W.D. La.1977), because a charge had already been filed against a company and the jurisdictional prerequisites to a Title VII action had not been fulfilled against a union, the union could not be added under the continuing wrong doctrine four years after the filing of the EEOC charge. These decisions show that JAC cannot here be named in a Title VII action on a continuing violation theory where the charge was untimely filed. Plaintiff Rose's initial charge was timely, and a continuing violation can be found against Local 130, the respondent charged. Nonetheless, this court will not extend the continuing wrong doctrine out of its context to allow JAC to be charged nineteen months after the alleged violation which was made the subject of a timely charge against Local 130.

Plaintiffs further argue that JAC must be kept in the Title VII aspect of this lawsuit as a necessary party under Fed.R. Civ.P. 19, as the focal point of this lawsuit will be the apprenticeship program. Thus, they argue that JAC, the body administering the apprenticeship program, should be a defendant in this lawsuit.

When a timely charge has not been filed against a union in an EEOC proceeding, it has been held that the union cannot be kept in as a necessary party pursuant to Fed.R.Civ.P. 19 in the Title VII action. *Hardy v. Bucyrus-Erie Co.,* 398 F.Supp. 64, 68 (E.D.Wis.1975). This is because plaintiff

retains an adequate remedy in the form of a section 1981 action if he has failed to satisfy Title VII's jurisdictional requirements. *Id.* at 69–70; *Waters v. Wisconsin Steel Works,* 427 F.2d 476, 486–88 (7th Cir.), *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970) [hereinafter *Wisconsin Steel Works I*]. The court does not see any jurisdictional bar to plaintiffs' suit against JAC pursuant to section 1981. As none of the named plaintiffs purporting to represent the class has established the requisite standing to sue JAC under Title VII, the plaintiffs may not seek Title VII relief against JAC on behalf of themselves or any other member of the class. *Jones v. United Gas Improvement Corp.,* 383 F.Supp. 420, 435 (E.D.Pa.1974). Plaintiffs' section 1981 action against JAC will stand.

### Deferral to the State Fair Employment Agency

Defendant PCA argues that the claims of each of the plaintiffs under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* must be dismissed because none of the plaintiffs has alleged or otherwise demonstrated that he invoked his state administrative remedies or that he had an adequate excuse for failing to do so. Defendant Local 130 argues that the claim of plaintiff Ivor Taylor under Title VII must be dismissed for failure to cooperate with the Illinois Fair Employment Practices Commission [hereinafter FEPC]. Plaintiffs respond that filing with the state FEPC is not a jurisdictional prerequisite to the filing of a Title VII action and that all five of the plaintiffs were referred to the Illinois FEPC pursuant to EEOC procedures approved by the Supreme Court in *Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

PCA's statement that matters outside the pleadings cannot be considered in a Fed.R. Civ.P. 12(b) determination is not entirely correct. Where subject matter jurisdiction is at issue, matters outside the pleadings may be considered. *Pintozzi v. Scott,* 436 F.2d 375, 378 n. 3 (7th Cir. 1970). The express provisions of 42 U.S.C. § 2000e–5

indicate that the filing of charges before the EEOC and receipt of a statutory notice of the right to sue are the only jurisdictional prerequisites to a Title VII suit. Nonetheless, the same section clearly sets forth a procedure whereby a valid charge is instituted with the EEOC only when a state employment practices commission has been given an adequate prior opportunity to consider the charge. *Harris v. Commonwealth v. Pennsylvania,* 419 F.Supp. 10, 13 (M.D. Pa.1976). In fact, the Court in *Love v. Pullman Co., supra,* 404 U.S., at 523–24, 92 S.Ct. 616, stated that a person claiming a Title VII violation may not maintain a suit in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief including state deferral pursuant to section 706(b), 42 U.S.C. § 2000e–5(b). *See Gibson v. Kroger Co.,* 506 F.2d 647, 650 (7th Cir. 1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975). *But see Waters v. Heublein, Inc.,* 547 F.2d 466, 468 (9th Cir. 1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977). The deferral to state agencies does not require the state remedy to be exhausted before an action is brought in federal court, as the statute provides for exhaustion of state procedures after the passage of sixty days. *Guse v. J. C. Penney Co.,* 562 F.2d 6, 8 (7th Cir. 1977); *Moore v. Sunbeam Corp.,* 459 F.2d 811, 821 n. 24 (7th Cir. 1972).

■ An examination of the exhibits attached to the briefs for Local 130 and for the plaintiffs shows that state deferral satisfying the requirements of *Love v. Pullman Co., supra,* was made by plaintiffs Plummer, Eggleston, and Rose. Although plaintiffs stated that all five of the plaintiffs were referred to the Illinois FEPC pursuant to the EEOC procedures approved in *Love v. Pullman Co., supra,* they have failed to attach any exhibit showing deferral on the part of Viera. Accordingly, PCA's motion to dismiss for lack of subject matter jurisdiction will be denied as to Plummer, Eggleston, and Rose. PCA's motion will be granted as to Viera.

Local 130's challenge to deferral on the part of Taylor must be examined separately. Taylor filed with the Illinois FEPC in 1977 after the filing of his charge with the EEOC. Plaintiffs have not shown that Taylor deferred his EEOC charge to the state in the manner approved by the Court in *Love v. Pullman Co., supra.* The Illinois FEPC did not waive jurisdiction and sought to conciliate the charge brought by Taylor. In May of 1977, an Illinois FEPC investigator sought to contact Taylor by telephone on two occasions. After failing to reach Taylor, the investigator sent Taylor a letter on May 5, 1977, requesting that he call the FEPC office so that the charge could be reviewed. Despite the lack of a reply by Taylor, the investigator communicated with the respondents charged with discrimination. The investigator, in a letter of May 16, 1977, to Taylor, wrote that she wanted to review the answer of the charged parties so as to further assist Taylor in exercising his rights. The letter also directed Taylor to contact the FEPC, or his charge would be dismissed for his failure to proceed. Taylor failed to make any response to the Illinois FEPC.

On June 29, 1977, the FEPC sent Taylor a notice of dismissal for failure to proceed and pursue the charge. He was given until August 1, 1977, to contact the agency to reconsider its decision. Taylor again failed to respond in any way to the agency's efforts to consider his charge. On August 12, 1977, the Illinois FEPC issued a notice of closure to Taylor dismissing his charge and closing its case on the ground of his failure to proceed. Plaintiffs have offered no counteraffidavits or exhibits to dispute this series of events. Instead, they merely conclusively refer to the exhibits concerning Taylor filed by Local 130 as showing that Taylor, like the other plaintiffs, deferred to the state FEPC through an EEOC practice approved in *Love v. Pullman Co., supra.* Taylor did defer his charge to the Illinois FEPC. Nonetheless, the issue remains whether his deferral adequately provided

the state an opportunity to exercise its power so as to satisfy the statutory requirement. *Harris v. Commonwealth of Pennsylvania, supra* at 13.

Some deferral to the state FEPC is necessary to give the state agency a prior opportunity to consider discrimination complaints so as to satisfy § 706(b), 42 U.S.C. § 2000e–5(b). *Love v. Pullman Co., supra,* 404 U.S. at 526, 92 S.Ct. 616. Here, there was total noncooperation on the part of Taylor with the Illinois FEPC. The state agency sought to conciliate by obtaining a response to the charge from the charged respondents. Taylor's total disregard of the state proceedings is inexcusable especially as the state FEPC exercised its jurisdiction at a time when Taylor was represented by counsel in the present suit.[1]

Senator Dirksen, part of the leadership team proposing the amendment for a state opportunity to conciliate in Title VII proceedings, stated: "[W]ith respect to the enforcement of the title, we undertook to keep primary, exclusive jurisdiction in the hands of the State Commissions for a sufficient period of time to let them work out their own problems at the local level." 110 Cong.Rec. 13087 (1964). *See also* the remarks of Senator Humphrey, a co-sponsor of the state deferral amendment, at 110 Cong.Rec. 12707–08, 13088 (1964). Taylor's total disregard of the state proceedings is inconsistent with the statutory mandate of 42 U.S.C. § 2000e–5(b) and the policy behind the section to give the state an opportunity to conciliate.

Although *Abshire v. Chicago & Eastern Illinois Railroad Co.,* 352 F.Supp. 601, 605 (N.D.Ill.1972), involved the total failure to file discrimination charges with a state agency, Taylor's failure to even communicate with the state agency after it had expended substantial effort to pursue conciliation of his charge is analogous. A plaintiff cannot bypass the procedures of Title VII and apply directly to the district court for relief without giving the state

1. The complaint here was filed on May 16, 1977.

agency and the EEOC the *opportunity* to attempt to conciliate so as to obtain voluntary compliance. *See Stebbins v. Nationwide Mutual Insurance Co.,* 382 F.2d 267 (4th Cir. 1967), *cert. denied,* 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880, *rehearing denied,* 390 U.S. 976, 88 S.Ct. 1061, 19 L.Ed.2d 1199 (1968). Taylor's total noncooperation with the Illinois FEPC deprives this court of jurisdiction over his Title VII claim. *See Scott v. University of Delaware,* 385 F.Supp. 937, 943 (D.Delaware 1974).

The dismissal of plaintiff Taylor's Title VII action for failure to cooperate with the Illinois FEPC, the failure of plaintiffs to demonstrate that Viera pursued state remedies satisfying the requirements of *Love v. Pullman Co., supra,* and the failure of plaintiff Rose to file a timely charge naming PCA leaves PCA named in no proper charge. Thus, plaintiffs' Title VII claims against PCA will be dismissed.

*Satisfaction of Title VII Jurisdictional Requirements*

Defendants PCA and JAC argue that each plaintiff must satisfy all the jurisdictional prerequisites to a Title VII action to properly remain as co-plaintiffs and class representatives. Plaintiffs respond that it is unnecessary for each named plaintiff to have exhausted Title VII's administrative remedies.

Courts have uniformly held that Title VII remedies may be awarded on a class basis under Title VII without the exhaustion of administrative procedures by the unnamed class members. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Bowe, supra* at 720. These cases do not say what the plaintiffs claim they do—each named plaintiff need not exhaust Title VII's administrative remedies prior to a class determination. Nonetheless, the same policy considerations warrant allowing plaintiffs here who have not exhausted Title VII administrative remedies to remain as named plaintiffs.

Jurisdictional requirements to be fulfilled before the filing of a Title VII action, 42 U.S.C. § 2000e–5(e), are meant to provide notice to a charged party and to bring to bear voluntary compliance. These purposes are served when any charge is filed and a suit follows asserting grievances common to the class. *Bowe, supra* at 720. The court in *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 498 (5th Cir. 1968), gave deference to these purposes and found that it would be wasteful for numerous employees, all with the same grievance, to have to process identical claims with the EEOC. Thus, not all the named plaintiffs were required to satisfy Title VII jurisdictional prerequisites. At the same time, the court stated that the issues raised by the plaintiffs in a class action are limited to those issues raised by a plaintiff satisfying the jurisdictional prerequisites to a Title VII suit. *Id.* at 499. Following *Oatis v. Crown Zellerbach Corp., supra,* in class actions, courts have allowed parties to remain named plaintiffs without the satisfaction of Title VII jurisdictional prerequisites. In these cases, the scope of the action is limited to the issues raised by those plaintiffs satisfying Title VII requirements. *Schoeppner v. General Telephone Co.,* 417 F.Supp. 453, 457 (W.D.Pa.1976); *Jones v. United Gas Improvement Corp.,* 383 F.Supp. 420, 426 (E.D.Pa.1974).

With class action status not yet determined, named plaintiffs will not be dismissed for failure to exhaust jurisdictional requirements. Defendants have been given notice and the EEOC has been given time to bring about voluntary compliance as to the plaintiffs who have satisfied jurisdictional requirements.[2] Those not satisfying jurisdictional prerequisites may remain as co-plaintiffs, because they may, if a class is determined, be necessary as class representatives to adequately and fairly protect the

---

2. The Fifth Circuit Court of Appeals recently held that if named plaintiffs are similarly situated and class action status has been denied, it will not dismiss the Title VII claims of plaintiffs not satisfying Title VII jurisdictional requirements where one named plaintiff has satisfied the jurisdictional requirements against a defendant. *Wheeler v. American Home Products Corp.,* 563 F.2d 1233 (5th Cir. 1977).

interests of the class within the limits of the charges filed by the plaintiffs satisfying all jurisdictional prerequisites. *Oatis v. Crown Zellerbach Corp., supra* at 499.

### The 180-day requirement

Local 130 argues that plaintiffs Plummer and Eggleston have commenced their action without waiting 180 days after filing their discrimination charges with the EEOC as required by 42 U.S.C. § 2000e–5(f)(1). Plaintiffs respond that completion of EEOC procedures by one named plaintiff satisfies the Title VII requirements so that the court has jurisdiction despite the failure of Plummer and Eggleston to wait 180 days before filing suit.

The court has already stated *supra* that each named plaintiff need not satisfy Title VII's jurisdictional requirements so long as at least one of the plaintiffs has satisfied the jurisdictional prerequisites against a particular defendant. As plaintiff Rose has satisfied all the jurisdictional prerequisites against Local 130, Plummer and Eggleston may remain as co-plaintiffs. Nonetheless, the court will consider whether Plummer and Eggleston have satisfied Title VII's jurisdictional requirements. The court will do so because the scope of the charges against Local 130 is limited to the issues raised in the EEOC charges filed by the plaintiffs satisfying Title VII jurisdictional prerequisites against it.

Although 42 U.S.C. § 2000e–5(f)(1) explicitly provides that a private claimant must wait for 180 days after filing his charge before bringing suit, Plummer and Eggleston filed this suit before the expiration of the 180 days. The Supreme Court recently stated in *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 361, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), that a plaintiff asserting a private right of action under Title VII must wait 180 days before bringing a lawsuit. Although the EEOC did give Plummer and Eggleston right to sue letters before the expiration of 180 days from the filing of their charges, this immediate issuance of a right to sue letter makes the

federal courts, rather than the EEOC, the primary forum for Title VII disputes. This is contrary to the statutory scheme of Title VII to provide the administrative agencies sufficient time to conciliate. *Budreck v. Crocker National Bank*, 407 F.Supp. 635, 643–45 (N.D.Cal.1976). The failure of Plummer and Eggleston to wait 180 days after filing their charges before proceeding in this court will result in their charges being unavailable to serve as the basis of the plaintiffs' action. The Title VII action against Local 130 will be limited to the scope of Rose's charge.

### Right to Sue Letters

Defendants argue that plaintiffs Plummer, Eggleston, and Rose have not fulfilled the jurisdictional prerequisite of obtaining a right to sue letter from the EEOC prior to the filing of this Title VII action. Plaintiffs respond that the receipt of a right to sue letter subsequent to the filing of a Title VII complaint and the amendment of the complaint to add the new allegations cures the jurisdictional defect in the original complaint. The plaintiffs further state that no other result would be consistent with the Court's suggestion in *Johnson v. Railway Express Agency*, 421 U.S. 454, 465, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), that plaintiffs file their section 1981 suit while the EEOC processes their Title VII claims.

Although defendants initially questioned whether Viera and Taylor had received right to sue notices prior to the institution of this suit, the exhibits attached to plaintiffs' memorandum in opposition to defendants' motions demonstrate that they did. Plummer, Eggleston, and Rose received right to sue notices from the EEOC subsequent to the filing of this suit. Within ninety days of receipt of these right to sue notices, plaintiffs amended their complaint on two occasions to allege these new jurisdictional facts.

42 U.S.C. § 2000e–5(f)(1) provides for the bringing of a Title VII action by an aggrieved person ninety days after the receipt of a right to sue notice from the EEOC.

The issue here is whether the receipt of a right to sue notice subsequent to the filing of a Title VII action gives a district court jurisdiction over the individual receiving the notice.

■ In *Gibson v. Kroger Co.*, 506 F.2d 647, 652 (7th Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975) [hereinafter *Gibson*], the plaintiff had filed his lawsuit on March 9, 1973, and did not receive his right to sue notice from the EEOC until August 20, 1973. The court in *Gibson* nevertheless stated that plaintiff could have amended his complaint after the receipt of the right to sue notice to cure the failure in his complaint to allege the exhaustion of Title VII remedies. The court in *Berg v. LaCrosse Cooler Co.*, 548 F.2d 211, 213 (7th Cir. 1977), followed *Gibson* and stated that a plaintiff may ask for and receive notice from the EEOC and amend his complaint to allege receipt after the filing of his initial complaint. Accordingly, the receipt of right to sue notices by Plummer, Eggleston, and Rose, as well as amendment of plaintiffs' complaint to allege fulfillment of this jurisdictional prerequisite, gives the court jurisdiction over these charges.[3]

■ Plaintiffs correctly state that the Supreme Court suggested in *Johnson v. Railway Express Agency, supra,* 421 U.S. at 465, 95 S.Ct. 1716, that plaintiffs file their section 1981 suit to avoid the tolling of the statute of limitations while the EEOC processes their Title VII charges. Nonetheless, this suggestion does not support the procedure that plaintiffs followed. They filed their Title VII suit, while three plaintiffs were still processing their charges through the EEOC, in order to file in conjunction with their section 1981 action. They then filed two amended complaints after these plaintiffs received right to sue notices. The Court in *Johnson v. Railway Express Agency, supra* at 466, 95 S.Ct. 1716,

stated that section 1981 and Title VII are separate and independent remedies for discrimination. Plaintiffs could have proceeded by first bringing a section 1981 action to avoid any statute of limitations problem. They could then have petitioned the court for a stay of the section 1981 action until the Title VII efforts at conciliation and voluntary compliance had been completed. *Id.* at 465, 95 S.Ct. 1716. At that point, they could have filed a supplemental pleading pursuant to Fed.R.Civ.P. 15(d), adding the Title VII claim. Plaintiffs could also have proceeded with the separate and independent section 1981 action. They could then have filed their Title VII action after jurisdictional prerequisites had been fulfilled and could have sought consolidation pursuant to Fed.R.Civ.P. 42(a). Plaintiffs' procedure of filing their Title VII claims before jurisdictional prerequisites had been completed certainly did not provide an orderly procedure. Their continued updating with respect to the satisfaction of Title VII jurisdictional prerequisites resulted in two amendments to the complaint and five rounds of complex briefing.

### Damages for Emotional Harm, Degradation, and Humiliation

All defendants argue that plaintiffs' Title VII claim of damages for emotional harm, degradation, and humiliation should be stricken as these forms of damages are not cognizable under Title VII. Plaintiffs respond that although punitive damages are not available under Title VII, the consequential damages they are asking for are available under Title VII.

■ Although plaintiffs correctly state that they may be entitled to damages for emotional harm, degradation, and humiliation under section 1981 of the Civil Rights Act of 1870, *Johnson v. Railway Express Agency, supra* at 460, 95 S.Ct. 1716, damages for these forms of compensatory relief

---

**3.** Of course, these plaintiffs must fulfill other jurisdictional prerequisites for the court to have jurisdiction over their EEOC charges. Plaintiffs Plummer and Eggleston failed to wait 180 days from the filing of their EEOC charge before bringing this action, as discussed *supra*. Plaintiff Rose has fulfilled all the jurisdictional prerequisites against Local 130 based on his initial EEOC charge.

is a separate question under Title VII. In Title VII actions, courts have found compensatory relief unavailable. *Id.* at 458, 95 S.Ct. 1716; *Pearson v. Western Electric Co.,* 542 F.2d 1150, 1151 (10th Cir. 1976).

 Title VII provides for injunctive relief and the ordering of appropriate affirmative action, including reinstatement or hiring of employees, with or without backpay, or "any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g).[4] Upon the finding of a Title VII violation, a court is to make persons whole for the injuries suffered as a result of unlawful employment discrimination within the limitations of its equitable powers. *Albemarle Paper Co. v. Moody, supra,* 422 U.S. at 418, 95 S.Ct. 2362. Awarding compensatory damages for emotional harm, degradation, and humiliation—a legal remedy—would be inconsistent with both the language of section 706(g) of Title VII, 42 U.S.C. § 2000e–5(g), and the limitation of a court's powers to the granting of equitable relief in Title VII cases. *Jiron v. Sperry Rand Corp.,* 423 F.Supp. 155, 166 (D.Utah 1975); *Pearson v. Western Electric Co., supra* at 1151. Accordingly, plaintiffs' claims of damages for emotional harm, degradation, and humiliation under Title VII will be stricken.

### Testing Procedures

Defendants Local 130 and JAC argue that the allegations of ¶ 11(f) of the complaint (¶ 12(f) of the second amended complaint) that defendants have conditioned journeyman status on a discriminatory and unvalidated test should be stricken under both Title VII and section 1981 because no

charge was filed with the EEOC containing this allegation. The plaintiffs reply that the EEOC charges filed relate to the denial of journeyman status. Because one of the prerequisites to becoming a journeyman plumber is the passing of a test, the charges necessarily incorporated the validity of the testing procedures.

 It is well-settled that a claim in this court based upon a violation of Title VII may properly encompass any acts of discrimination similar to or reasonably related to the allegations made in the charge initiated before the EEOC. *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (7th Cir.) (en banc), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976) [hereinafter *Jenkins*]. The requisite similarity between an EEOC charge and a Title VII complaint is shown if the charge gave the defendant sufficient notice of the alleged kinds and areas of discrimination. *Jiron v. Sperry Rand Corp., supra* at 159. Absent a finding of the requisite similarity, a court must dismiss the claim for lack of jurisdiction. *Edwards v. North American Rockwell Corp.,* 291 F.Supp. 199, 203 (C.D.Cal.1968).

The EEOC charge of Hayward Rose alleges that he was denied journeyman status.[5] As testing is a means of securing journeyman status in the plumbing trade, it is within the scope of Rose's charge challenging the denial of journeyman status. Accordingly, plaintiffs' Title VII claim of a discriminatory and unvalidated test will not be dismissed.

 Furthermore, plaintiffs' allegation in their complaint of a discriminatory

---

4. 42 U.S.C. § 2000e–5(g) provides in pertinent part:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the un-

lawful employment practice), or any other equitable relief as the court deems appropriate.

5. Plaintiffs Viera and Taylor also allege denial of journeyman status in their EEOC charges. The court has not been shown that Viera has fully satisfied the jurisdictional prerequisites for this Title VII action, so it will not rely on his charge for its decision. Taylor's charge also will not be relied upon as he has failed to fully satisfy the jurisdictional prerequisites to a Title VII action.

and unvalidated test necessary to secure journeyman status will not be dismissed under section 1981. Section 1981 provides a federal remedy against discrimination in private employment on the basis of race whereby a claimant may be entitled to legal and equitable relief. *Johnson v. Railway Express Agency, supra*, 421 U.S. at 459–60, 95 S.Ct. 1716. Section 1981 relief is available irrespective of whether a claimant has pursued Title VII administrative remedies. *Jenkins, supra* at 166. Plaintiffs may challenge the administration of a test used to secure journeyman status pursuant to section 1981 even though their Title VII charges may not have encompassed a challenge to discrimination in securing journeyman status. Their complaint of racial discrimination in the plumbing trade encompasses a challenge to testing to secure journeyman plumbing status pursuant to section 1981.

## SECTION 1981

### National Origin Discrimination

All defendants argue that plaintiffs' allegations of national origin discrimination fail to state a claim under section 1981 of the Civil Rights Act of 1870. Plaintiffs respond that the holding of the Court in *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), applying section 1981 to white citizens, coupled with previous Supreme Court holdings applying section 1981 to aliens, warrants application of section 1981 to hispanics for national origin discrimination.

▮ It is well-settled that discrimination based on national origin is not encom-

passed by section 1981. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); [6] *Vasquez v. Werner Continental, Inc.*, 429 F.Supp. 513, 515 (N.D.Ill.1977). The Court in *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 285–87, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), limited its determination to a finding that section 1981 prohibits racial discrimination against whites as well as non-whites. This finding did not overrule the earlier determination by the Court in *Jones v. Alfred H. Mayer Co., supra.* Accordingly, the allegations of national origin discrimination under section 1981 by Taylor and Viera are stricken.[7]

### Exhaustion of Remedies

Defendant Local 130 argues that plaintiffs Plummer's and Eggleston's section 1981 claims must be dismissed for failure to exhaust EEOC and state FEPC administrative remedies.[8] Plaintiffs respond that no exhaustion requirement exists before a section 1981 remedy can be pursued.

▮ Defendant Local 130 argues that under the authority of *Waters v. Wisconsin Steel Works I, supra* at 487, plaintiffs cannot sue under section 1981 without pleading a reasonable excuse for their failure to exhaust EEOC remedies. In *Waters v. Wisconsin Steel Works*, 502 F.2d 1309, 1315 (7th Cir. 1974) [hereinafter *Wisconsin Steel Works II*], the court stated that exhaustion of Title VII remedies is not a jurisdictional prerequisite to an action under section 1981, thus overruling its previous holding in the *Wisconsin Steel Works I* opinion. The Sev-

---

**6.** Although the *Jones* decision was based on section 1982 of the Civil Rights Act of 1870, its determination of no national origin discrimination under section 1982 is equally applicable to section 1981 in light of the historical interrelationship of the two sections. *Runyon v. McCrary*, 427 U.S. 160, 171, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

**7.** To the extent that plaintiffs Taylor's and Viera's claims as hispanics are based on racial discrimination in violation of section 1981, these allegations will be allowed to remain. *Gomez v. Pima County*, 426 F.Supp. 816, 819 (D.Ariz.1976).

**8.** Specifically, Local 130 claims that Plummer and Eggleston did not give the EEOC 180 days within which to effect a voluntary resolution of their charge before bringing their complaint in this action. Local 130 further claims that Plummer and Eggleston have not filed charges with the state FEPC. Despite exhibits attached to plaintiffs' supplemental memorandum showing that Plummer and Eggleston have filed charges with the Illinois FEPC, Local 130 has not withdrawn its argument.

enth Circuit has subsequently affirmed this principle en banc. *Jenkins, supra* at 166. *See also Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 522 F.2d 1235, 1239 (7th Cir. 1975). The court finds that plaintiffs Plummer's and Eggleston's allegations of a section 1981 violation are sufficient without the exhaustion of EEOC remedies.

Defendant Local 130 further argues that plaintiffs Plummer, Eggleston, and Taylor [9] must exhaust state FEPC remedies before proceeding with their section 1981 action. Just as Title VII remedies need not be exhausted before a section 1981 action is brought, state employment discrimination remedies need not be exhausted. The decision in *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), makes clear that state administrative remedies need not be exhausted before commencing a section 1983 action. Defendants have not shown, and the court does not see any reason, why state FEPC remedies need to be exhausted before commencing a section 1981 action. The court finds that plaintiffs' allegations of a section 1981 violation are sufficient without the exhaustion of state FEPC remedies.

## MOTIONS FOR A MORE DEFINITE STATEMENT

The motions for a more definite statement were filed by JAC, PCA, and Local 130. Defendants' contentions are essentially threefold:

1. Plaintiffs have failed, as required by Fed.R.Civ.P. 10(b), to state in separately numbered counts the two different causes of action filed pursuant to Title VII and section 1981;
2. Plaintiffs have vaguely and ambiguously identified the nature of their claims making a responsive pleading impossible; and
3. Plaintiffs have not adequately identified the class they seek to represent.

Plaintiffs contend that they have fulfilled the "notice pleading" requirements of the Federal Rules of Civil Procedure. They submit that defendants could not better respond if plaintiffs realleged their Title VII and section 1981 claims in separate counts. They further assert that greater specificity is not required to support their class allegations at this stage of the proceedings. Plaintiffs also argue that they have not failed to identify adequately each of the named plaintiffs and the nature of their respective claims. In support thereof, plaintiffs submit that it is irrelevant which plaintiffs are black and which are hispanic because they have equal standing to represent each other under both Title VII and section 1981. Plaintiffs further submit that it is irrelevant which plaintiffs suffered from each discriminatory practice identified in the complaint because the circuit courts of appeal have uniformly recognized that a named plaintiff in a Title VII case need not have suffered each and every wrong challenged. Plaintiffs state that the courts "have recognized the standing of a minority plaintiff to commence an 'across-the-board' challenge to eradicate racial discrimination wherever it may exist within an employment system even though the plaintiff, himself, has not suffered any injury from some of the practices he challenges." Plaintiffs' answering memorandum at 20.

Defendants take issue with plaintiffs' arguments. With respect to plaintiffs' "across-the-board" theory, defendants submit that a plaintiff is not relieved of his obligation to properly plead his claims merely because he seeks "across-the-board" relief. Defendants further assert that recent federal decisions have signaled the demise of "across-the-board" class actions, citing, *inter alia, East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), and *Lightfoot v. Gallo Sales Co.*, 15 FEP Cases 614 (N.D.Cal.1977).

### Separate Counts

Rule 10(b) of the Federal Rules of Civil Procedure provides, *inter alia*, that each claim, founded upon a separate transaction or occurrence, and each defense, oth-

---

**9.** Taylor has no section 1981 action for discrimination based on national origin, as discussed *supra.* Plaintiffs have not informed the court whether Taylor will proceed with a section 1981 claim alleging race discrimination.

er than a denial, be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth. Separate statements may be required where there are multiple defendants and their potential liability is several. 2A *Moore's Federal Practice* ¶ 10.03. Separate statements may be required also where multiple plaintiffs join more than one cause of action against the same defendants. *Id.* The overriding consideration, however, is whether separate statements by counts will facilitate the clear presentation of the matters set forth. *Id.*

Although both Title VII and section 1981 prohibit various forms of discrimination, they are not entirely coextensive in their purpose or effect. *Johnson v. Railway Express Agency, supra,* 421 U.S. at 460, 95 S.Ct. 1716. Separate counts can facilitate the clear presentation of the respective claims. Nevertheless, the court is of the opinion that requiring separate counts will not facilitate matters here. The court has already been required to sift through the allegations of the complaint and the exhibits filed, and it does not see any real advantage to be gained by requiring separation at this time. As Chief Judge Lawrence stated in *Boles v. Union Camp Corp.,* 16 F.R. Serv.2d 1561, 1564 (S.D.Ga.1972):

> I think we can make out as things stand. To grant the motion will mainly serve to prolong the ride on the procedural carrousel that this case started a year and a half ago. The motion to require separate counts is therefore denied.

### Vague and Ambiguous Pleading

Had the court not already ruled on the motions to dismiss, it might well have or-

dered plaintiffs to file a more definite statement or to file a third amended complaint on the ground that the second amended complaint is vague and ambiguous making a responsive pleading difficult. The second amended complaint, like the others filed, is certainly not a paragon of clarity. The complaint does not make clear which plaintiffs allege racial discrimination and which allege national origin discrimination. It has been difficult also to determine which plaintiffs have satisfied Title VII jurisdictional prerequisites against which defendants. Likewise, it has been difficult to sort out which defendants may have committed the alleged acts.[10] Moreover, the court does not believe that plaintiffs should be relieved of their obligation to plead unambiguously merely because "across-the-board" relief might be sought.[11]

Nevertheless, the court is of the opinion that granting defendants' motions for a more definite statement will not facilitate matters. The court has endeavored painstakingly to plow through plaintiffs' complaints and the exhibits which have been filed. Many of the problems raised in the motions for a more definite statement have been dealt with in this court's disposition of the motions to dismiss. If defendants desire further information about the nature of plaintiffs' claims, discovery is the appropriate means for obtaining it, as well as for developing the issues.

### Class Allegations

Defendants' final argument is that plaintiffs have failed to adequately identify

**10.** It should also be noted that ruling on the motions to dismiss and the motions for a more definite statement has been difficult. There have been five rounds of briefing on these motions, with some of the issues in the motions being mooted by subsequent amended complaints and exhibits attached to plaintiffs' briefs.

**11.** As for defendants' argument that the "across-the-board" approach has fallen into disfavor with many courts, this argument can be reached another day. In cases such as *Lightfoot v. Gallo Sales Co., supra,* courts have

faced the "across-the-board" question in a different context than that raised here, namely, whether a class should be certified. The question before this court is whether plaintiffs should be required to articulate with greater specificity the nature of their claims so that defendants can make a responsive pleading, and the court has determined that under the circumstances they should not be required to do so. The question whether a class can be certified on an "across-the-board" theory can be reached, if necessary, when the court is asked to address the class certification issue.

the class they seek to represent. Defendants submit that plaintiffs' class allegations should be more specific to enable them to determine, *inter alia*, whether the named plaintiffs are adequate and typical representatives.

The court is of the opinion that the class action allegations are sufficient to withstand a motion for a more definite statement. The burden of proof is going to be on the plaintiffs to establish that the requirements of Rule 23(a) and (b) have been met. *Lightfoot v. Gallo Sales Co., supra* at 618. When the class certification issue is briefed, defendants will have ample opportunity to argue that certification should be denied. Moreover, defendants can ascertain through discovery whether plaintiffs are adequate and typical representatives. Plaintiffs' class action allegations are sufficient at this time.

CONCLUSION

All plaintiffs may continue as co-plaintiffs in their Title VII action. Plaintiffs' claims against JAC and PCA are dismissed for failure to charge it in any timely EEOC charge. Plaintiffs state a claim against Local 130.

Plaintiffs state a claim in ¶ 12(f) of their second amended complaint to challenge testing procedures to determine journeyman status. Plaintiffs do not state a Title VII claim to recover damages for emotional harm, degradation, and humiliation.

Plaintiffs Viera and Taylor do not state a claim pursuant to section 1981 for national origin discrimination. The plaintiffs may proceed with their section 1981 claims even if they did not all fully exhaust Title VII administrative remedies.

Although the court is not fully satisfied with the state of plaintiffs' second amended complaint, it will deny the motions for a more definite statement to expedite the proceedings.

For the reasons stated, it is therefore ordered that defendants' motions to dismiss shall be, and the same are hereby, granted in part and denied in part, and defendants' motions for a more definite statement shall be, and the same are hereby, denied.

SUPPLEMENTAL MEMORANDUM

This cause is before the court on the motion of plaintiffs to vacate portions of this court's memorandum and order of April 21, 1978, granting in part and denying in part defendants' motions to dismiss. For the reasons stated, the motion is granted in part and denied in part.

In reaching its decision of April 21, 1978, on defendants' motions to dismiss, the court considered exhibits outside of the pleadings where subject matter jurisdiction was at issue in accordance with *Pintozzi v. Scott,* 436 F.2d 375, 378 n. 3 (7th Cir. 1970). Based on *Pintozzi v. Scott, supra,* the court considered plaintiffs' allegation in their complaint that they had "fully complied with all procedural requirements of Title VII" a sufficient statement of jurisdiction because plaintiffs further attached exhibits to their memoranda demonstrating the satisfaction of jurisdictional facts. Defendants Local 130 and PCA in their joint memorandum in opposition to plaintiffs' motion to vacate now point out to the court that the Seventh Circuit Court of Appeals mandates that allegations and exhibits establishing Title VII jurisdiction must be found in the pleadings. *Rohler v. TRW, Inc.,* 576 F.2d 1260, 1265–67 (7th Cir. 1978); *Gibson v. Kroger Co.,* 506 F.2d 647, 650 (7th Cir. 1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975). Nonetheless, because the authenticity of the exhibits previously considered by the court in the order of April 21, 1978, and the exhibits offered in support of the motion to vacate are not controverted, the memorandum and order on the motions to dismiss and for a more definite statement will stand and the court will consider the exhibits offered by the plaintiffs in support of their motion to vacate. *Baker v. California Land Title Co.,* 349 F.Supp. 235, 237 (C.D.Cal.1972). Because the orders of the court fully consider the extent to which plaintiffs have satisfied Title VII jurisdictional requirements, plaintiffs will be granted leave to amend so as to

allege and attach exhibits showing the jurisdictional facts as established in the memorandum and order of April 21, 1978, and today's supplemental order. *Rohler v. TRW, Inc., supra* at 1267.

The court ruled in its memorandum and order of April 21, 1978, that plaintiff Alberto Viera "failed to attach any exhibit showing deferral" to the Illinois Fair Employment Practices Commission [FEPC] as is required by 42 U.S.C. § 2000e–5(c). His failure to defer resulted in his EEOC charge being unavailable as the basis for a Title VII action against Local 130 and PCA. The court further ruled that the EEOC charge of plaintiff Ivor Taylor against Local 130 and PCA could not be relied upon by the plaintiffs as a basis for their Title VII action because of his total noncooperation with the Illinois FEPC in processing his charge. Plaintiffs have now attached exhibits to their motion to vacate showing that Viera's and Taylor's charges were deferred to the Illinois FEPC on December 18, 1975, with the EEOC reassuming jurisdiction on February 18, 1976, sixty days later. When the court decided that Viera's and Taylor's Title VII actions had to be dismissed, it did not have the benefit of the exhibits showing deferral to the state FEPC that have now been presented. Although the court deplores plaintiffs Taylor's and Viera's total noncooperation with the Illinois FEPC impeding potential conciliation, the provision of 42 U.S.C. § 2000e–5(c) for state deferral of EEOC charges requires no more than a sixty-day no-action period by the EEOC to satisfy this jurisdictional prerequisite to a Title VII suit. *Guse v. J. C. Penney Co.,* 562 F.2d 6, 8 (7th Cir. 1977). Because plaintiffs Viera and Taylor have deferred their EEOC charges to the Illinois FEPC for a sixty-day period and have satisfied all other jurisdictional prerequisites to a Title VII suit against defendants Local 130 and PCA, their charges can be relied upon as the basis for plaintiffs' Title VII action against these defendants.

The court ruled that plaintiffs Edell Plummer and Josef Eggleston failed to wait 180 days after filing their administrative charges with the EEOC before initiating their Title VII action contrary to 42 U.S.C. § 2000e–5(f)(1). Plaintiffs have attached exhibits showing that Plummer and Eggleston received their right to sue notices more than 180 days after filing their EEOC charges. Nonetheless, plaintiffs do not dispute that plaintiffs Plummer and Eggleston filed their Title VII complaint against the defendants without waiting 180 days from the filing of their charges as previously determined by the court. The court agrees with the statement by defendants Local 130 and PCA in their memorandum in opposition to plaintiffs' motion to vacate at 10 that "[b]y *prematurely* filing their lawsuit, both Plummer and Eggleston have acted contrary to the scheme of Title VII and deprived the administrative agency of sufficient time to conciliate." (emphasis in the original). The court reaffirms its previous finding that "[t]he failure of Plummer and Eggleston to wait 180 days after filing their charges before proceeding in this court will result in their charges being unavailable to serve as the basis of the plaintiffs' action."

The court has ruled that "[a]s none of the named plaintiffs purporting to represent the class has established the requisite standing to sue JAC under Title VII, the plaintiffs may not seek Title VII relief against JAC on behalf of themselves or any member of the class." Plaintiffs in their motion to vacate petition the court to withhold ruling on whether Title VII jurisdiction is present over JAC until the close of discovery because discovery may show that JAC is an agent of defendants Local 130 and PCA. The presence of Title VII jurisdiction over defendants Local 130 and PCA does not warrant a finding of Title VII jurisdiction over JAC on an agency theory because JAC was not named in a timely EEOC charge and plaintiffs have jurisdiction pursuant to 42 U.S.C. § 1981 over JAC. The court has adequately considered plaintiffs' agency argument in its memorandum and order of April 21, 1978, and reaffirms its finding of no Title VII jurisdiction over JAC made there.

The court is troubled by the statement of defendants Local 130 and PCA in their

memorandum in opposition to the motion to vacate that their motions for a more definite statement will become germane if the order of April 21, 1978, is amended. The court has examined the case cited by these defendants in support of their proposition—*Marshall v. Electric Hose and Rubber Co.,* 65 F.R.D. 599 (D.Del.1974)—and does not find its reasoning persuasive. Judges in this district are not obliged to follow a decision of the District Court of Delaware, and the court is not aware of any Seventh Circuit authority adopting the approach of the court in *Marshall.* *In re Folding Carton Antitrust Litigation,* 75 F.R.D. 727, 731 (N.D.Ill.1977). The court will not order the plaintiffs to make a more definite statement in their amended complaint for the reasons stated in the order of April 21, 1978.

For the reasons stated, plaintiffs' motion to vacate portions of the court's order of April 21, 1978, shall be, and the same is hereby, granted in part and denied in part. Plaintiffs are further ordered to amend their complaint consistent with the court's order of April 21, 1978, and today's supplemental order on or before August 11, 1978. Defendants are to answer as previously ordered on or before September 1, 1978.