Vernon C. **RINKER**

v.

**PENN CENTRAL TRANSPOR-
TATION CO.**

Civ. A. No. 72–1333.

United States District Court,
E. D. Pennsylvania.

Nov. 6, 1972.

**218**

Lawrence J. Richette, Philadelphia, Pa., for plaintiff.

Hermon M. Wells, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Vernon C. Rinker, a railroad employee, has filed this "Petition for Review of an Award Issued by the National Railroad Adjustment Board" under the provisions of the Railway Labor Act, 45 U.S.C. §§ 151 et seq. The Petition is in two counts. The first count attacks an award of a Public Law Board [1] which reinstated Rinker (who had been discharged by defendant for violation of operating rules), but without back pay, as "seemingly inconsistent" and therefore erroneous. The relief sought in the first count is award of back pay together with attorney's fee. The second

count charges that after reinstatement had been ordered, defendant recalled Rinker to service, but upon examination, found him medically disqualified. Rinker charges that the medical disqualification was not warranted, and was therefore a wrongful discharge for which he seeks damages for breach of contract for future employment, plus counsel fees and punitive damages.

Before the court is defendant railroad's Motion to Dismiss or for Summary Judgment on the grounds that Count I fails to state a claim upon which relief can be granted since the award is final and binding, and the court lacks jurisdiction over the claim stated in Count II.

Briefly, the facts are these:

Plaintiff is a member of the United Transportation Union (UTU), formerly Brotherhood of Railroad Trainmen. UTU, the duly designated and authorized representative of trainmen employed by Penn Central Transportation Company, is party to a collective bargaining agreement with Penn Central which provides, inter alia, methods for presentation and handling of claims for compensation alleged to be due (Rule 4–P–1); matters of discipline (Rule 7–A–1); disputes concerning physical fitness of trainmen (Rule 8–C–1); and an agreement governing the usual manner of handling disputes between the railroad and trainmen represented by UTU.

On May 21, 1970, Rinker, who had been employed by defendant since 1944, was involved in the derailment of a locomotive. As a result of the incident he was held out of service pending trial on the charges of violation of operating

---

1. Section 3, Second of the Railway Labor Act as amended by Public Law 89–456 effective June 20, 1966, 45 U.S.C. § 153, Second provides for the establishment of a special board of adjustment to resolve disputes otherwise referable to the Railroad Adjustment Board, upon the mutual agreement of the carrier and the labor organization representing employees of said carrier. Such procedure was enacted in 1966 to relieve the large backlog of grievances at the National Railroad Adjustment Board under Section 3, First of the Act. In addition, the 1966 Amendments provided equal opportunity to carrier and employee for limited judicial review, where previously judicial review had been afforded only to the carrier.

Boards established under this section are generally referred to as Public Law Boards, since that designation is used by the National Mediation Board. 29 C.F.R. Part 1207.

rules, including disregard of a stop signal. Following the trial, Rinker was disciplined by dismissal. Appeals within the company were pursued without satisfactory settlement and the matter was therefore submitted to Public Law Board No. 550 for decision. On March 1, 1972, Public Law Board No. 550 issued Award No. 113 ordering defendant to reinstate Rinker to his position, but without payment of back wages.

Following the award of reinstatement, Rinker reported to defendant for assignment. He was given a medical examination and was found medically unfit. At Rinker's request, defendant's medical officer set forth, in a letter dated March 29, 1972, a summary of the findings. (Exhibit C to Plaintiff's Petition).

## COUNT I

Defendant contends that Count I must be dismissed because the award of the Public Law Board is final and binding and not subject to review at all; and alternatively, if the award is subject to review, the scope of review is limited and the award must be upheld unless it is completely unsupported and totally without reason.

The contention that awards of the Public Law Boards are not subject to review at all is based on the difference in the statutory language relating to awards of the National Railroad Adjustment Board (NRAB) and the Public Law Boards. With respect to awards of the NRAB, the statute provides in Section 3, First (m) (45 U.S.C. § 153 First (m)) that awards "shall be final and binding upon both parties to the dispute." Section 3, First (q) provides that an employee may file a petition for review, and

"On such review, the findings and order . . . shall be conclusive . . ., except that the order . . . may be set aside, in whole or in part, or remanded . . ., for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

Section 3, Second, 45 U.S.C. § 153, Second, contains no comparable provision for review of awards of Public Law Boards, and defendant argues that, therefore, such awards are final and binding and not subject even to the limited review available to NRAB awards.

Since I conclude that the award must be sustained under the limited scope of review available to NRAB awards, it will not be necessary to decide whether awards of Public Law Boards are likewise subject to review.[2] Union Pacific R. Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959), established the rule that an NRAB award is final and binding and that no action may be maintained on the merits of cases decided by the Board. Board awards may be reviewed only for the failures specified in Section 3, First (q), (as set forth, supra, at p. 4), or if it can be said that the award is "wholly baseless and completely without reason." Gunther v. San Diego & Arizona Eastern Railway Co., 382 U.S. 257, 261, 86 S.Ct. 368, 371, 15 L.Ed.2d 308 (1965). These same limitations on review of Board decisions have been applied to cases in which the Board has ordered reinstatement without back pay. In such cases, courts have held that they lack power to review and have

2. I note in passing, however, without deciding the question, that there are several well reasoned opinions which hold that judicial review of awards of Public Law Boards is co-extensive with that applicable to awards of NRAB. See *Transportation-Communication Employees Union v. St. Louis-San Francisco Railway Co.,* 296 F.Supp. 507 (1968), affirmed Transportation-Communication Division-Brotherhood of Ry., Airline & S. S. Clerks, Freight Handlers, Exp. & Station Emp. v. St. Louis-San Francisco Ry. Co., 419 F.2d 933 (8th Cir. 1969); Baltimore & Annapolis R. Co. v. National Mediation Board, 321 F.Supp. 51 (D.Md.1970).

granted railroads' motions for summary judgment. See McDonald v. Penn Central Transportation Co., 337 F.Supp. 803 (D.Mass.1972); Spade v. Chesapeake & Ohio Railway Co., 325 F.Supp. 1079 (D. Md.1971).

■ Plaintiff argues that reinstatement without back pay is inconsistent in that, if reinstatement was ordered, the Board must have found that the discharge was wrongful, and if the discharge was wrongful, it should have ordered back pay. In my view, there is nothing at all inconsistent about an award of reinstatement without back pay. When the matter was submitted to the Board, the Board's consideration was not confined solely to *whether* disciplinary action by the railroad was warranted, it extended also to determining the propriety of the disciplinary action imposed. Quite obviously the Board here concluded that disciplinary action was warranted, but that complete dismissal was not. The refusal to award back pay amounts to a reduction of the penalty from dismissal to a period of suspension. In considering the propriety of the penalty the Board properly had before it Rinker's prior disciplinary record which included five separate incidents for which Rinker had been disciplined for violations of safety rules, and six incidents for violating proper operating practices. He had been disciplined twice by dismissal (on both occasions he was subsequently restored) and on four occasions by suspension for varying periods of time. [p. 11–B, Exhibit C, of Defendant's Motions to Dismiss or for Summary Judgment.]

■ Rinker attempts to analogize his case to a criminal case, arguing that it would be a violation of a defendant's rights to put before the jury the defendant's prior record. This is quite so if the purpose is solely to determine guilt or innocence, but even in criminal cases it is essential to consider a defendant's prior record in determining what sentence to impose. In the instant case, it would have been quite impossible to determine how severe the disciplinary action should have been for Rinker's violations of operating rules without knowledge and consideration as to the number of times he had been disciplined in the past, and with what effect. Rinker's claim that the introduction of his prior disciplinary record violated due process rights is without merit.

■ Finally, Rinker's claim that the UTU was not specifically authorized to enter into the agreement to submit matters to the Public Law Board must also fall. By its constitution, the UTU is granted authority to represent its members unless a member withdraws that authority by written notice. See Elgin, Joliet & Eastern Railway Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), adhered to in 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). Rinker gave no such notice here.

## COUNT II

■ In Andrews v. Louisville & Nashville R. R. Co., 406 U.S. 320, 92 S. Ct. 1562, 32 L.Ed.2d 95 (1972), the Supreme Court held that claims for wrongful discharge under railroad collective bargaining agreements are subject to resolution only by compulsory administrative procedures provided by the collective agreement and by the Railway Labor Act. *Andrews* overruled Moore v. Illinois Central R.R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941), which allowed suit if the employee had accepted his discharge as final and the relevant state law permitted such action without prior exhaustion of administrative remedies.

The collective bargaining agreement here (Rule 8–C–1) requires a dispute as to physical fitness to be submitted for determination by a Board of Doctors, whose decision "shall be final." The *Andrews* case precludes this court's consideration of Count II, and plaintiff's counsel, by letter dated August 10, 1972, to the court, has so conceded.

Defendant's Motion for Summary Judgment will be granted.