**Edward GIBSON, Plaintiff-Appellant,**

v.

**The KROGER COMPANY and Bakery Workers Local No. 372–A of Indianapolis, affiliated with the Bakery and Confectionary Workers International Union of America, AFL–CIO, Defendants-Appellees.**

No. 73–2132.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1974.

Decided Nov. 21, 1974.

As Amended Dec. 2, 1974.

Certiorari Denied April 14, 1975. See 95 S.Ct. 1571.

Theodore D. Wilson, Robert A. Zaban, Indianapolis, Ind., for plaintiff-appellant.

Charles L. Whistler, Michael R. Maine, Dennis E. Zahn, Indianapolis, Ind., for defendants-appellees.

Before SPRECHER and TONE, Circuit Judges, and PERRY, Senior District Judge.[*]

PERRY, Senior District Judge.

This is an appeal from a judgment of the District Court in favor of the defendants, The Kroger Company ("company") and Bakery Workers Local No. 372-A of Indianapolis, affiliated with the Bakery and Confectionary Workers International Union of America, AFL–CIO ("union"), in a civil rights action brought by the plaintiff, Edward Gibson, for damages resulting from the company's denial of Gibson's application for the position of forklift operator in the Stock and Receiving Department of the company's Indianapolis bakery subsequent to the loss of his position of helper in said department due to production cutbacks.

Gibson is a member of the Negro race. He was hired by the company in November, 1956, and was assigned to the Cleaning and Pan Cleaning Department where he worked until August, 1969, when he was advanced to the position of Helper in the Stock and Receiving Department ("stockroom").

In April, 1972, there were five employees, including Gibson, in the stockroom. Of the five employees, Gibson had the least priority in the department, i. e., he had the least time in the department itself; however, he had greater plant-wide seniority than two of the five. When,—as a result of production cutbacks,—the number of employees required to operate the stockroom was reduced from five to four, Gibson, being lowest in departmental seniority, was transferred out of the department and was given the opportunity to select, in any other department of the plant, any position held by an employee having less plant-wide seniority than Gibson had. Immediately thereafter, on or about April 17, 1972, Gibson asked to be transferred back into the stockroom and to displace ("bump") the employee who was the forklift ("bug") operator in that department. Gibson's request was denied on the grounds that (1) the company's agreement with the union ("labor agreement") did not permit an employee to "bump", within his own department, another employee with greater departmental seniority; and (2) Gibson's contractual prerogative to "bump" other employees with less plant-wide seniority applied only to departments other than the department from which Gibson had been displaced (by virtue of his junior departmental seniority).

On April 28, 1972, pursuant to the procedure prescribed in the labor agreement for resolution of disputes over the proper interpretation of the labor agreement, Gibson filed a written grievance in which he claimed that he had a contractual right, under the collective bargaining agreement, to "bump" the stockroom "bug" operator who had less plant-wide seniority than Gibson, irrespective of their relative departmental seniority.

On June 22, 1972, Gibson filed a complaint with the Indiana Civil Rights Commission, and on August 15, 1972, he

[*] Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

filed a complaint with the Equal Employment Opportunity Commission ("EEOC" or "Commission"). Meanwhile, pursuant to the labor agreement between the company and the union, Gibson's grievance was not resolved through the three-step contractual grievance procedure and, in accordance with the labor agreement, an impartial arbitrator was selected to hear the case and render a decision.

On October 30, 1972, the grievance,— together with a related group grievance of some other employees who had been transferred in consequence of the reduction in force,—was arbitrated before Mr. David Dolnick, an eminent labor arbitrator. Gibson was represented at the hearing both by an attorney for the union and by his own personal counsel, who was given an opportunity to participate in the hearing and in the presentation of evidence on Gibson's behalf.

On December 8, 1972, Arbitrator Dolnick issued a detailed opinion denying Gibson's grievance and the aforesaid group grievance. He ruled that under the terms of the labor agreement Gibson was not entitled to the job of "bug" operator because, notwithstanding the fact that Gibson had more plant-wide seniority than the white employee holding the position, departmental seniority was, under the terms of the agreement, the controlling factor in determining entitlement to the "bug" operator job. The arbitrator thus sustained the company's interpretation that the labor agreement required the company to permit the "bug" operator to retain his position, and did not allow the company to displace him with Gibson.

Arbitrator Dolnick went on to decide the grievances of some 17 other white and black employees on the same principle: all employees—black or white, male or female—whose jobs were affected by the temporary reduction in force could exercise plant-wide seniority only to replace a less senior full-time employee in another department.

On March 9, 1973, three months after the arbitrator's decision was rendered, Gibson brought this action, alleging that the company and the union had engaged in unfair employment practices as to him, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Act") (42 U.S.C. § 2000e et seq.).

In his complaint Gibson alleged that he had been discriminated against in that he had not been permitted to displace a white employee whose job assignment Gibson desired. The complaint did not, however, allege that Gibson had either pursued or exhausted the administrative remedies prescribed by the Act through the EEOC. Nor did the complaint allege that Gibson had received any notice of right to sue from the EEOC.

On April 30, 1973, the union filed a motion to dismiss, in which several defects in Gibson's complaint were alleged. One such alleged defect was Gibson's failure to allege and to attach, as an exhibit, a letter from the EEOC giving notice of right to sue ("right-to-sue notice").

On May 2, 1973, the company filed a consolidated motion seeking dismissal of Gibson's action, or a summary judgment for the company. One alleged basis for the company's motion to dismiss was that Gibson had failed to satisfy the jurisdictional requirements for the commencement of a civil action under Title VII of the Act because of his failure to allege receipt of, or to file a copy of, any right-to-sue notice from the EEOC.

On August 22, 1973, Gibson filed a memorandum of law in opposition to the aforesaid motions of the defendants. The memorandum was denominated "Answer to Defendants' Motion To Dismiss". Attached thereto was a right-to-sue notice to Gibson from the EEOC dated August 20, 1973.

On October 15, 1973, the District Court granted defendants' motion to dismiss for lack of jurisdiction on the

ground that the right-to-sue notice was a jurisdictional requirement.

Gibson contends that the District Court erred in concluding that it lacked jurisdiction to hear and determine Gibson's action. Gibson argues that although his complaint lacked any allegation that Gibson had pursued or exhausted the administrative remedies prescribed by Title VII of the Act and any allegation that Gibson had received a right-to-sue notice from the EEOC, nevertheless at the time of dismissal the District Court had the requisite jurisdictional facts before it in the form of Gibson's Answer to Defendants' Motion to Dismiss, wherein Gibson stated that he had filed a complaint with the Indiana Civil Rights Commission on June 22, 1972 and with the EEOC on August 15, 1972, and that he had received his right-to-sue notice from the EEOC on August 20, 1973. Gibson further argues that the right-to-sue notice was attached to the aforesaid Answer, and that the District Court acknowledged in its opinion that Gibson received his right-to-sue notice on August 20, 1973.

Gibson summarizes his argument in these words:

> Although the Complaint may have had some gaps with respect to Title VII matters, the bureaucratic procedures which the trial court considered critical with respect to its jurisdiction were complied with at the time that the Court said that it had no jurisdiction . . .

The company contends that Gibson ignored a basic jurisdictional prerequisite to a Title VII civil action by commencing his action prior to the issuance of a right-to-sue notice from the EEOC. The company asserts that the basic jurisdictional prerequisite which Gibson ignored is contained in the following language of 42 U.S.C. § 2000e–5(f)(1):

> . . . If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section . . . the Commission, . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . .

We agree with the company.

■ Although Title VII of the Act provides each complainant with an absolute right to bring a civil action in federal court, it is well settled that the administrative remedies available from the EEOC must be "exhausted," in the traditional sense of the term, as a prerequisite to the commencement of such action. Beverly v. Lone Star Lead Const. Corp., 437 F.2d 1136, 1139 (5th Cir. 1971), and cases cited therein.

This Court held in 1968 that the requirement that a complainant must invoke the administrative process within the time limitations set forth in section 706(d) of the Act is a jurisdictional precondition to the commencement of a court action, and that there are only two additional jurisdictional prerequisites for such commencement of court action: first, a notification to the aggrieved party by the Commission that it has been unable to obtain voluntary compliance, and second, the action must be filed within thirty days after the notification. Choate v. Caterpillar Tractor Company, 402 F.2d 357, 359 (7th Cir. 1968).

■ Gibson did not allege in his complaint that he had filed charges with the EEOC. Nor did he allege that more than 60 days had expired since filing charges with the EEOC and that he had requested a right-to-sue notice from the Commission. We think that our decision in the case at bar is controlled by our holding in Cox v. United States Gypsum, 409 F.2d 289 (7th Cir. 1969), reh. denied, 409 F.2d 289 (7th Cir. 1969). In *Cox*, seven laid-off women employees

filed charges with the EEOC claiming discrimination on account of their sex. More than 60 days thereafter, the women filed a civil action against their company and their union under Title VII of the Civil Rights Act of 1964. The Act (42 U.S.C. § 2000e–5(f)(1)) gave the EEOC 60 days to secure a conciliation agreement (voluntary compliance). The EEOC had given no notice to the plaintiffs, as was provided in the Act, that it had been unable to obtain voluntary compliance, but the plaintiffs had rejected the offer of the company before bringing their action. The plaintiffs argued that their own rejection of the company's offer, after 60 days had expired, established the inability of the EEOC to obtain voluntary compliance, and notice thereof to the plaintiffs, so that the 30-day period within which the Act allowed commencement of action had begun. This Court rejected this theory, saying:

. . . Although plaintiffs were in a position immediately to demand and obtain notice from the commission [EEOC], so that notice may be no more than a formality under the circumstances of this case, we think it is an important formality. Congress has limited the period within which an action may be begun to thirty days. The shortness of the period makes it all the more important that the time from which it runs be definitely determinable. . . .

409 F.2d at 291.

In the case at bar, unlike *Cox,* Gibson did not even allege that he had attempted to utilize the procedures available through the EEOC to reach voluntary compliance.

In our Order denying the petition for rehearing in *Cox,* we said:

Our decision, affirming that of the district court, in part, turned on the fact that the commission had given no notice of inability to secure voluntary compliance under 42 U.S.C. § 2000e–5(e). Plaintiffs now inform us that on July 6, 1967, after they commenced their action, the commission wrote to each plaintiff as follows:

"We have been informed that you and the other Charging Parties have commenced suit against both the Union and the Company.

"We regret that it was not possible to resolve this dispute through the conciliation processes of the Commission. Should you feel that the Commission's services may be helpful during the litigation, please feel free to call upon us."

Plaintiffs suggest that these letters might be construed to constitute the statutory notice of inability, not previously called to the court's attention. Plaintiffs' court-appointed counsel was unaware of these letters until April 28.

Defendant, takes the position, among others:

"Moreover, the letters issued by the Commission under date of July 6, 1967 do not comply with Section 706(e) of the Act which provides that if the Commission has been unable to obtain voluntary compliance, 'the Commission shall so notify the person aggrieved and a civil action may, within 30 days thereafter, be brought against the respondent named in the charge.' *The letters dated July 6, 1967 were subsequent to the institution of the action in the court* below and in recognition of the fact that suit had been started on the charges, instead of a notification, as required by Section 706(e), that the Commission had been unable to obtain voluntary compliance."

Under the circumstances of this case, *we agree with the defendant's statement,* just quoted. [Emphasis added.]

Order on Rehearing, May 16, 1969.

Gibson relies heavily upon Hoover v. Opportunities Industrialization Center of the Roanoke Valley, Inc., 348 F.Supp. 657 (W.D.Va.1972) where the District Court said, regarding a right-to-sue let-

ter which was received 13 days after a Title VII action was filed:

. . . the filing of the complaint prior to receipt of notice, which was shortly forthcoming, is not sufficient grounds for dismissal of the plaintiff's complaint. 348 F.Supp. at 661.

We agree with the court below that the facts in the case at bar are clearly distinguishable from those in *Hoover*. Gibson, unlike the plaintiff in *Hoover*, did not even allege in his complaint that he had previously filed charges with the EEOC, much less allege that he was about to receive notice from the EEOC of his right to sue. In *Hoover*, after the right-to-sue notice was received from the EEOC, the plaintiff requested and was given leave to file an amended complaint. After Gibson received his notice from the EEOC, he made no attempt to request leave to file an amended complaint. The *Hoover* court could see that the plaintiff had substantially complied with the procedural aspects of the Act. Gibson, however, chose to ignore these procedural aspects. Moreover, the *Hoover* court recognized the force of *Cox*, for it went to considerable length to distinguish it, after first stating:

. . . this case [*Cox*] has been cited frequently as the leading authority on interpretation of the "notice of failure of conciliation", section 706(e) of the Civil Rights Act.

In his brief (p. 9) Gibson contends:

"Bureaucratic delay should not stifle a party in the exercise of his civil or Title VII rights. Congress has mandated quicker action from the E. E.O.C. [citation omitted]. Bureaucratic procrastination or delay should not stifle or hinder a party with respect to the free exercise of his Title VII or civil rights [citation omitted]."

It is ironic that Gibson's own course of conduct is responsible for his situation. He did not request notice to sue from the EEOC prior to the decision of the arbitrator, and he did not request notice prior to filing suit. We agree with the union that Gibson's failure to have the right-to-sue notice from the EEOC at the time of commencement of suit is directly attributable to his own delay in requesting same. Furthermore, there is no indication of the existence of any special circumstances which might have made it a hardship for Gibson to seek said notice. Thus the doctrine enunciated in Stebbins v. Continental Ins. Companies, 143 U.S.App.D.C. 121, 442 F.2d 843 (1971), is applicable to the case at bar. In *Stebbins* the Court held that where the plaintiff, who filed with the EEOC a charge that he had been denied the position of claims adjuster on racial grounds, did not claim that it was a hardship for him to seek notice from the EEOC (that it was unable to obtain voluntary compliance), and did not claim that the EEOC refused to give such notice, the receipt of such notice (the right-to-sue notice) was a jurisdictional prerequisite to the filing of a civil action by the plaintiff under Title VII of the Civil Rights Act of 1964, even though the Act provided that the EEOC give such notice within 60 days after the filing of a complaint with the EEOC and the EEOC had not done so. Said the Court, at 442 F.2d, pages 845–846:

. . . We therefore agree with the prevailing view that, in the absence of special circumstances, the notice of right to sue is a jurisdictional prerequisite to suit.

This Court should not reverse the judgment of the District Court in view of Gibson's persistent neglect or refusal to pursue the judicial remedies that were available to him. The defendants' motions to dismiss clearly called Gibson's attention to the fatal fault in his complaint: his failure to allege that he had either pursued or exhausted the administrative remedies prescribed in Title VII of the Act. Gibson could have cured the fault as soon as he received his right-to-sue notice simply by amending his complaint to include the necessary allegation and the fact of his receipt of the notice. Fed.R.Civ.P. 15(a). Thus, instead of filing on August 22, 1973 his Answer To Defendants Motion

To Dismiss, which Answer contained his right-to-sue notice, Gibson could have amended his complaint. He had ample time to do so—from August 22 to October 15, 1973, when his complaint was dismissed. He surely could not expect the District Court then, or this Court now, to put itself into the position of a litigant and amend his complaint for him.

Gibson had still another remedy which he neglected or refused to pursue. After the District Court dismissed Gibson's complaint, he had an opportunity to file a new action; for under the 1972 amendments to the Act under which he was suing, he had 90 days from the date of receipt of his right-to-sue notice to file an action conforming to the Act. 42 U.S.C. § 2000e–5(f)(1). By eschewing this opportunity, Gibson thus persisted in his neglect or refusal to pursue the judicial remedies open to him.

On appeal, Gibson raises for the first time the contention that the District Court should not have dismissed the complaint because even if the court lacked jurisdiction under Title VII of the Civil Rights Act of 1964 as amended, it still would have jurisdiction under the Civil Rights Act of 1866 (42 U.S.C. § 1981). We agree with the company that this contention must be rejected for the reason that at no point until his brief on appeal has Gibson raised any claim or asserted jurisdiction under the latter statute. The principle that new issues or new bases for liability may not be raised for the first time on appeal is too well known to require citation. In Head v. Timken Roller Bearing Co., 486 F.2d 870, 874 (6th Cir. 1973), the plaintiffs filed a complaint alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964. The plaintiffs moved during the trial, at the close of their evidence, to amend their complaint to allege an additional cause of action under the Civil Rights Act of 1866, specifically to obtain the benefit of alleged discriminatory activities prior to the effective date of Title VII of the Civil Rights Act of 1964 (July 2, 1965).

The court below denied this motion. The Court of Appeals held that the trial court did not err in denying the motion. The Court, at 486 F.2d 873–874, quoted the following language from Nevels v. Ford Motor Co., 439 F.2d 251, 257 (5th Cir. 1971):

> While it is generally true that leave to file amendments should be freely given, Fed.R.Civ.P. 15(a), amendments should be tendered no later than the time of pretrial, unless compelling reasons why this could not have been done are presented . . .

Just as the Court in *Head* found no compelling reason why the plaintiffs could not have moved to amend their complaint earlier than they did, we find no reason why Gibson, prior to the trial court's decision, could not have moved to amend his complaint to include an allegation under 42 U.S.C. § 1981.

For all of the foregoing reasons, the decision of the District Court is Affirmed.