Kenneth C. GRIMES, Plaintiff,

v.

**LOUISVILLE AND NASHVILLE RAIL-ROAD COMPANY and Local 1353, International Brotherhood Electrical Workers, Defendants.**

No. EV 81–130–C.

United States District Court,
S.D. Indiana,
Evansville Division.

Feb. 10, 1984.

Robert F. Stayman, Evansville, Ind., for plaintiff.

F. Wesley Bowers, Evansville, Ind., Michael S. Wolly, Washington, D.C., Rodney H. Grove, Evansville, Ind., Galen J. White, Jr., Louisville, Ky., for defendants.

## MEMORANDUM

BROOKS, District Judge.

Kenneth C. Grimes (Grimes) is a black male who was employed by Louisville and Nashville Railroad Company (Railroad) in February 1976 as an "electrician apprentice." He was a member of Local 1353 International Brotherhood of Electrical Workers (Union) and his terms of employment were covered by a collective bargaining agreement between the Railroad and the Union. One of the provisions of the collective bargaining agreement is that "an employee (who) has been unjustly suspended or dismissed ... shall be reinstated with his seniority rights unimpaired, and compensated for the wage loss ... resulting

from said suspension or dismissal." *See*, Rule 34 of Agreement.

In late August or early September of 1976 Grimes was involved in an altercation with a temporary supervisor concerning the installation of an electrical switch. A disciplinary hearing ensued in September 1976 at which a Union representative was present to represent Grimes but participated minimally. Subsequent to the hearing Grimes was suspended from his employment and then discharged. At the time of his dismissal, his position was that of an "upgraded electrician apprentice." After the discharge the Union processed Grimes' grievance through a hearing before the National Railroad Adjustment Board (Board).

On June 13, 1979 the Board rendered its decision and ordered the Railroad to reinstate Grimes without loss of seniority or position but without back pay. The decision explained that, while Grimes had improperly refused to obey an order from a supervisor, mitigating circumstances made dismissal an excessive form of discipline. Grimes returned to work on July 9, 1979 as an "electrician apprentice" rather than an "upgraded electrician apprentice" and although it is not entirely clear it appears that his seniority rights may have been impaired. After his return to work Grimes complained to Union representatives about his loss of position and seniority, but it appears that no action was taken.

On March 16, 1981 Grimes filed a charge of racial discrimination against the Railroad with the Equal Employment Opportunity Commission (EEOC). On March 30, 1981 Grimes was laid off and placed on furlough, a status which still existed at the time of the filing of this action. Thereafter, on June 11, 1981 Grimes filed suit against the Railroad and the Union invoking jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

The Complaint states five (5) claims, designated as pleading paragraphs, which are as follows:

(1) A claim against the Railroad for breach of the collective bargaining agreement arising out of Grimes' discharge, reinstatement, and subsequent furlough.

(2) A claim against the Union for breach of its duty of fair representation under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

(3) A claim against both the Railroad and the Union for racial discrimination in employment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

(4) A claim against both the Railroad and the Union for conspiring to deprive Grimes of his civil rights in violation of 42 U.S.C. § 1985.

(5) An appeal under 45 U.S.C. §§ 153 First (p), (g), 153, Second, of the Board decision which refused to order back pay for the period of time during which Grimes had been unemployed.

In March and April of 1982 each of the defendants filed a motion for summary judgment as to all claims made against them and as to the appeal of the Board's decision. Since defendants' motions encompass all of Grimes' claims the Court will address each claim separately and in order with the exception of the claims which are set forth in pleading paragraphs one and two which, because of their nature, are interdependent and are thus best addressed together.

## BREACH OF COLLECTIVE BARGAINING AGREEMENT AND BREACH OF THE DUTY OF FAIR REPRESENTATION CLAIMS

Grimes claims that, by discharging him without just cause and then reinstating him in a lower rated position with loss of seniority and back pay, the Railroad breached the collective bargaining agreement with the Union and that the Union breached its duty of fair representation by failing to adequately and timely represent him in his disputes with the Railroad. Defendants argue that Grimes' claims should be dismissed since such claims are, based upon

the undisputed facts, without merit and are barred by the applicable statute of limitations. The Union relies on the two (2) year statute of limitations for actions related to employment provided for in Indiana Code § 34-1-2-1.5, while the Railroad contends that the appropriate limitations period is the ninety (90) day period provided for in Indiana Code § 34-4-2-13 which governs actions to vacate arbitration awards. Plaintiff in his response to the motions relies alternatively on the two (2) year statute of limitations set forth in the Federal Railway Labor Act, 45 U.S.C. § 153 First (R), or if the state statute of limitation is to be applied then upon Indiana Code § 34-1-2-1.5.

The United States Supreme Court recently addressed the question of what statute of limitations should apply in an employee's suit against an employer and a union alleging the employer's breach of the collective bargaining agreement and the union's breach of its duty of fair representation. *Del Costello v. International Brotherhood of Teamsters*, —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In that case, the Court found that they should adopt the six (6) month statute of limitations embodied in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) for suits against both the employer and the union. This view has been followed in recent Seventh Circuit decisions. *See e.g. Metz v. Tootsie Roll Industries*, 715 F.2d 299 (7th Cir. 1983); *Storck v. International Brotherhood of Teamsters*, 712 F.2d 1194 (7th Cir. 1983). Thus, based upon the above authorities any claim which Grimes has that arose from activity prior to December 11, 1980 would be time-barred since this suit was commenced on June 11, 1981.

However, while a suit brought by an employee against an employer for breach of the collective bargaining agreement and against a union for breach of the duty of fair representation is generally brought pursuant to § 301 of the Labor Management Relations Act, the Seventh Circuit has recently found that Section 301 does not apply to employers subject to the Railway Labor Act, and that no other statute

purports to give federal courts jurisdiction to enforce collective bargaining agreements with such employers. *Graf v. Elgin, Joliet and Eastern Railway Company and Brotherhood of Railway Carmen, Local No. 882*, 697 F.2d 771 at 774 (7th Cir.1983). The Court, in *Graf* did find, however, that a contract claim against an employer could be brought under a federal common law of railroad collective bargaining contract interpretation since it made sense to do so in as much as the common law was already being applied in workers' suits against unions. *Id.* at 776–777.

The question that the Seventh Circuit did not face in *Graf* (since the only issues presented dealt with the jurisdiction of the federal courts) and the one that still remains to be answered is,—What is the applicable statute of limitations for an employee's suit against an employer and a union which alleges the employer's breach of the collective bargaining agreement and the Union's breach of the duty of fair representation, where the employer is not subject to § 301 of the Labor Management Relations Act?

As already noted, the Supreme Court in *Del Costello* held that the six (6) month statute of limitations of § 10(b) should be applied in § 301/fair representation cases. The Court therein noted that while there is no federal statute of limitations expressly applicable to this type of suit, that § 301/fair representation claims are akin to charges of unfair labor practices which are subject to the statutory limitation period of § 10(b). Thus, the Court concluded that "[t]he need for uniformity among procedures followed for similar claims ... as well as the clear congressional indication of the proper balance between the interests at stake, counsels the adoption of § 10(b) of the NLRA as the appropriate limitations period for lawsuits such as this." *Id.* —— U.S. at ——, 103 S.Ct. at 2294.

This Court finds the reasoning in *Del Costello* to be persuasive. The Court also notes that *Del Costello* was decided after the Seventh Circuit's decision in *Graf*, and

that the Supreme Court did not expressly limit its decision to breach of contract/fair representation claims brought pursuant to § 301. Thus, although Grimes' claims against the Railroad and the Union can't be brought as a § 301/fair representation action, the Court is of the opinion that they are sufficiently similar to that type of action such that the six (6) month statute of limitations enunciated in *Del Costello* should be applied.

■ As noted earlier, Grimes' discharge occurred in 1976. His reinstatement came in July 1979. Both events are alleged to have been breaches of the collective bargaining agreement and the Union's duty of fair representation. From these facts, defendants argue that it is unquestionable that plaintiff's complaint as to these two events is time barred. The Court is of the opinion that defendants are correct in as much as both events occurred substantially before the limitations period that the Court has found applicable to this case. Although it is not abundantly clear from the response, Grimes, however, seems to contend that his discharge, subsequent reinstatement, and furlough constitutes a continuing series of wrongs which toll the running of any statute of limitations. Under this view since Grimes is currently furloughed the alleged breaches continue to occur and damages continue to accrue.

The Court does not agree that the "continuing violation" doctrine proposed by Grimes has application in this case. The only activity which occurred within the limitations period is Grimes' furlough in March 1981. Clearly, the simple act of being laid off due to a lack of seniority is not of itself unlawful or a breach of the collective bargaining agreement. Apparently Grimes does not dispute this fact since there is no indication that he ever filed a grievance with regard to the furlough itself, or that an effort to comply with the grievance mechanism would have been futile. Therefore, the only way in which the March 1981 furlough can be charged to be a breach of the contract is through reliance on what are alleged to be earlier breaches. How-

ever, to allow Grimes to cloak with illegality his furlough by reliance upon earlier events which are now time barred would result in the revival of what are now legally defunct claims. *Local Lodge No. 1424, International Association of Machinists v. N.L.R.B.*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960); *Metz v. Tootsie Roll Industries, supra.*

■ Based upon the foregoing, the Court is of the opinion that Grimes' discharge and reinstatement claims against both defendants are barred by the limitations period set out in *Del Costello*. Additionally, since the alleged wrongful conduct of the defendants with regard to Grimes furlough is predicated upon the earlier events, that activity cannot constitute a "continuing violation." Nor can Grimes claim that the furlough itself is a breach of the contract, since before an employee may litigate the merits of his contract claim he must prevail on the unfair representation claim against the Union, *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), a claim which cannot be brought in this case since no grievance has ever been filed with respect to the furlough.

Therefore, defendants' motion for summary judgment as to pleading paragraphs one and two of plaintiff's complaint are hereby GRANTED.

## TITLE VII—DISCRIMINATION CLAIM

Grimes contends in pleading paragraph three (3) that the defendants intentionally engaged in discriminatory employment practices on the basis of race that deprived him of the right to the same employment opportunities enjoyed by white persons. The defendant Railroad contends that in so far as Grimes' charge of discrimination is predicated upon his discharge and reinstatement that the claim is untimely because both events occurred substantially more than One Hundred Eighty (180) days prior to the complaint Grimes filed with the EEOC. As to Grimes' charge that he was furloughed in retaliation for his complaint to the EEOC the Railroad argues that since

no charge of retaliation has been filed with the EEOC Grimes may not assert for the first time that claim in this action. The Union's basis for summary judgment as to pleading paragraph three (3) is less complicated. It is the Union's contention that since it has never been the subject of an EEOC charge that the Court lacks jurisdiction over it as to this claim.

It should be noted that Congress has provided explicit jurisdictional requirements in Title VII cases before a plaintiff may maintain a suit—*See*, 42 U.S.C. § 2000e–5. First, a plaintiff must, absent exceptional circumstances, file a timely charge of discrimination with the EEOC. Second, the plaintiff must receive a right to sue letter from the EEOC and acted upon it. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Failure to satisfy both requirements deprives the Court of jurisdiction over the Title VII claims—*Movement For Opportunity, Etc. v. General Motors*, 622 F.2d 1235 (7th Cir.1980); *Gibson v. Kroger Co.*, 506 F.2d 647 (7th Cir. 1974).

In the case *sub judice* Grimes has failed to allege in his complaint compliance with the above requirements. Nor does Grimes in his response to defendant's motions indicate that he received a right to sue letter from the EEOC. On that basis it would appear that the Court is without jurisdiction to entertain Grimes' Title VII claims. However, from a reading of the motions as well as all the other documents filed in this cause, there is little doubt that Grimes did in fact file a complaint with the EEOC on March 16, 1981, and it appears that the EEOC issued a right to sue letter on June 3, 1981. *See*, Plaintiff's List of Witnesses and Exhibits, Item 5(c). Thus, the Court is satisfied that Grimes has complied with the second requirement for filing suit.

However, it is the first requirement (that of filing a timely charge before the EEOC) that the defendant Railroad contends Grimes has not complied with. Section 2000e–5 requires that a complaint be filed with the EEOC within One Hundred and Eighty (180) days after the alleged unlawful employment practice occurred. It is undisputed in this case that no such charge was filed within One Hundred Eighty (180) days of either Grimes' discharge in 1976 or his reinstatement in 1979. Thus, any claim based solely on these two events is barred. Grimes contends however that there is a continuing violation in that the Railroad failed to accord him the proper seniority status, thus giving present effect to the Railroad's past conduct.

There is no doubt in the Court's mind that the Railroad's seniority system gives present effect to what is alleged to have been a past act of discrimination (*i.e.* Grimes' reinstatement in 1979 without seniority credit). Moreover, it is clear that seniority can, and oftentimes does, govern which employees will be furloughed or laid off and which will be recalled. But in the case before the Court Grimes does not attack the bona fides of the Railroad's seniority system. He merely argues that the past wrongful conduct has a continuing effect.

It is clear that past acts of discrimination which have not been made the basis for a timely charge before the EEOC are the legal equivalent of discriminatory acts which occurred before the statute was passed. *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Therefore, the Railroad is entitled to treat their actions in 1976, and 1979 as lawful since Grimes' EEOC complaint was not filed until 1981. And past events, which have no legal significance can not now support an argument that the violation is a continuing one. *United Air Lines, supra*.

Grimes further contends, however, that he was furloughed in retaliation for his March 16, 1981 EEOC charge. The Railroad argues that since no charge of retaliation has ever been filed with the EEOC Grimes may not now for the first

time assert such claim. With this the Court cannot agree. While it is true that a Court may not generally exercise jurisdiction over claims not encompassed within the EEOC charge, *Plummer v. Chicago Journeymen Plumbers, Local Union Etc.*, 452 F.Supp. 1127 (D.C.Ill.1978), the Court may exercise jurisdiction over like or related matters which might reasonably be expected to be subject to EEOC investigation growing out of the charge. *Flesch v. Eastern Pennsylvania Psychiatric Institute*, 434 F.Supp. 963 (E.D.Pa.1977). On the basis of the record before the Court, it is impossible to say that Grimes' charge of retaliation is not related to the charges that were pending before the EEOC at the time that Grimes was furloughed. Furthermore, retaliation for participating in the EEOC process can exist even if the claims contained in the EEOC charge are without merit or are based upon activity which is found to be lawful. *Abramson v. University of Hawaii*, 594 F.2d 202 (9th Cir.1979). It is the nature of retaliation claims that they arise only after the filing of an EEOC charge. To require a plaintiff to resort to the EEOC process before bringing such a charge would mean that in every case where retaliation is an issue the plaintiff would have to file a second EEOC charge. The Court is of the opinion that such requirement would have the effect of erecting an unnecessary procedural barrier to the maintenance of a Title VII suit which could discourage employees from exercising their rights under the Civil Rights Act. *See, National Organization For Women v. Sperry Rand Corp.*, 457 F.Supp. 1338 (D.C.Conn.1978); *Bernstein v. National Liberty International*, 407 F.Supp. 709 (D.C.Pa.1976); *Held v. Missouri Pacific Railroad Company*, 373 F.Supp. 996 (D.C.Tex.1974).

Based upon the foregoing, the Court finds that the defendant Railroad's motion for summary judgment as to pleading paragraph three of plaintiff's complaint should be GRANTED in part and DENIED in part. In so far as Grimes' claims relate to his 1976 discharge, his 1979 reinstatement, and his contention of a continuing violation, such claims are barred due to untimely filing with the EEOC. The Court therefore lacks jurisdiction over such claims and the defendant Railroad's motion with respect to those claims is GRANTED. With regard to Grimes' claim of retaliation, the Court finds that the averments in defendant's motion are insufficient to show that there are no genuine issues of material fact as to the reason for Grimes' furlough thereby precluding the granting of defendant Railroad's motion. Thus, as to that issue the Railroad's motion for summary judgment is DENIED.

As noted earlier, the defendant Union also filed a motion for summary judgment as to pleading paragraph three. At a pretrial conference held on April 5, 1982 before the Honorable Patrick Endsley, United States Magistrate, the plaintiff, and plaintiff's counsel agreed that pleading paragraph three of the complaint was without merit as to any claim against the Union. The Magistrate at that time found that the Union's motion for summary judgment as to that claim should be granted. The Court having examined the record in this cause, concurs with the finding of the Magistrate, and hereby GRANTS the defendant Union's motion for summary judgment as to pleading paragraph three.

### § 1985 CONSPIRACY CLAIM

Pleading paragraph four (4) of Grimes' complaint alleges that the defendants conspired to deprive Grimes of his right to equal employment opportunities in violation of Title 42 United States Code Section 1985. Both defendants have moved for summary judgment as to this claim on two separate grounds: (1) that the applicable statute of limitations for this type of action is a bar to recovery for any events occurring prior to June 11, 1979, and (2) that the conspiracy claim is a wholly speculative claim which lacks any factual basis. Grimes attempts to resist defendants' second contention by stating that the alleged discriminatory practices of the defendant Railroad, occurring as they did in a union shop, could not

have occurred without the tacit and actual consent of the Union, thus giving rise to more than a mere suspicion that a conspiracy existed.

 The Seventh Circuit has had occasion to address the question of what is the appropriate statute of limitations for actions brought pursuant to the Civil Rights Enforcement Statutes, §§ 1981, 1983, 1985, and 1986. *See, Movement For Opportunity Etc., supra* (§ 1981 Action); *Hill v. Trustees of Indiana University,* 537 F.2d 248 (7th Cir.1976), (§ 1983 Action). In both cases, the appellate court found that the two year statute of limitations in Indiana Code § 34–1–2–2 should be applied to the civil rights actions then under consideration. Grimes has cited the Court to no authority, and indeed failed to even address the issue in his brief, which would justify applying a different statute of limitations to the present § 1985(3) action. The Court is therefore of the opinion that in light of the decisions in *Movement For Opportunity, Etc.* and *Hill* that the appropriate statute of limitations to be applied to Grimes' conspiracy claim is two (2) years.[1] Thus, any claim that Grimes could assert that arose before June 11, 1979 is time barred. Application of this period of limitations, then leaves Grimes only with the claim of conspiracy as to his reinstatement in July 1979, and his furlough in March 1981.

Examination of Grimes' complaint with respect to his conspiracy claim reveals that the only allegation supporting his claim is that, "[t]he practices and policies of Defendants "Union" and "Company" constitute a conspiracy ..." *See,* Complaint ¶ 39. In essence Grimes seems to be saying that the alleged wrongful acts could not have occurred but for the existence of a conspiracy. However, when Grimes was asked in his deposition to delineate what evidence he possessed which supported the existence of the conspiracy he answered that:

[T]he Union and the Company were both involved in either seeing that I did or did not have what I am supposed to have. And beyond that, it's very difficult for me to give you an accurate statement about what particular specifics, because I don't know.
Grimes Deposition 36–37.

 While the Court agrees with the Seventh Circuit's statement in *Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7th Cir.1975) *cert. denied* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976) that:

[P]laintiff is entitled to the fullest opportunity to adduce evidence in support of (his) claim. But (he) is not entitled to a trial, or even to discovery, merely to find out whether or not there may be a factual basis for a claim ...

it must appear from the complaint that there is at least sufficient minimal factual support of the existence of a conspiracy. It is,

[n]ot sufficient to allege that defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a *mutual understanding.* Even were such allegations made, they must further be supported by some factual allegation suggesting such *meeting of the minds.* (Emphasis added)

*Sparkman v. McFarlin,* 601 F.2d 261 (7th Cir.1979) (alleged conspiracy under § 1983).

 Perusal of the complaint does not reveal any allegation or factual basis to support a finding of mutual understanding or of a meeting of the minds between the Union and the Railroad. Nor can Grimes point to anything which would support such a finding. He simply requests that this Court infer from his discharge, reinstatement, and furlough that there was some sort of agreement to discriminate against him. This the Court is unwilling to do. Moreover, Grimes asserts his claims as violations of Title VII, see, Complaint ¶¶ 1, 36. However, it is clear that § 1985(3) may not be invoked to redress violations of Title

---

**1.** (1) Indiana has enacted Indiana Code § 34–1–2–1.5 which provides specifically for a two (2) year statute of limitations for all employment related actions.

VII. *Great American Federal Savings and Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

Therefore, for the reasons given above the Court is of the opinion that pleading paragraph four (4) of the complaint fails to sufficiently allege the existence of a § 1985(3) violation. And in as much as the alleged violations are based upon violation of Title VII, a § 1985(3) action is not the appropriate remedial action. The defendant Railroad's motion for summary judgment as to pleading paragraph four (4) is hereby GRANTED. Likewise, defendant Union's motion for summary judgment as to the same claim is also GRANTED.

### APPEAL OF DECISION OF THE NATIONAL RAILROAD ADJUSTMENT BOARD

Pleading paragraph five (5) of the complaint is an appeal of the June 13, 1979 decision of the National Railroad Adjustment Board (No. 7956 Second Division) in so far as the decision denied Grimes compensation for lost wages, benefits, and increments from September 22, 1976 through July 7, 1978. Grimes contends that the decision was contrary to the evidence and the Board's own findings, discriminatory, arbitrary, capricious, and in complete disregard of the provisions of the collective bargaining agreement.

The defendant Railroad has moved for summary judgment as a matter of law as to this claim on the basis that the scope of review of this Court is limited by the Railway Labor Act and that Grimes has not demonstrated that the decision should be set aside.

The National Railroad Adjustment Board is essentially an arbitration panel established and governed by 45 U.S.C. § 151 *et seq.* Courts reviewing decisions of the Board have an extremely narrow standard of review. *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978); *Kotakis v. Elgin, Joliet, and Eastern Railway Co.*, 520 F.2d 570 (7th Cir.1975). The decision of the Board may be set aside only for failure of the Board to comply with the requirements of the chapter; for failure of the order to conform or confine itself to matters within the scope of the divisions jurisdiction; or for fraud or corruption by a member of the division making the order. *See*, 45 U.S.C. § 153 First(q).

Pleading paragraph five (5) of the complaint does not allege that the Second Division failed to comply with the requirements of the Railway Labor Act, or that there was any fraud or corruption by any member of the Board. Instead, Grimes essentially alleges that the Board's decision did not confine itself to or conform with matters within the scope of the Board's jurisdiction since the decision failed to award him back pay. In order for the Court to find that the Board's decision is outside the scope of the division's jurisdiction, the decision must be "without foundation in reason or fact" *Laday v. Chicago Milwaukee, St. Paul and Pacific Railroad Co.*, 422 F.2d 1168 (7th Cir.1970), or "wholly baseless and without reason." *Gunther v. San Diego & Arizona Eastern Railway Co.*, 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965). And it is clear that the Court on review may not open up the Board's findings on the merits, or interpret the collective bargaining agreement. *Gunther, supra, Edwards v. St. Louis-San Francisco Railway Co.*, 361 F.2d 946 (7th Cir.1966).

In the case *sub judice* Grimes contends that the failure of the Board to award backpay is "baseless" and "without reason". However, there is authority for the proposition that an award of reinstatement without back pay is not so baseless or wholly without reason as to require reversal of the arbitrator's decision. *See, Air Lines Pilots Ass'n Intern. v. Eastern Airlines*, 632 F.2d 1321 (5th Cir.1980); *Amoco Oil Co. v. Oil, Chem. & Atomic Wkrs. Etc.*, 548 F.2d 1288 (7th Cir.1977) *cert. denied* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977); *Rinker v. Penn Central Trans-*

*portation Co.*, 350 F.Supp. 217 (E.D.Pa. 1972). As the Court noted in *Rinker:*

> ... [T]here is nothing at all inconsistent about an award of reinstatement without back pay ... the Board's consideration was not confined solely to whether disciplinary action by the railroad was warranted, it extended also to determining the propriety of the disciplinary action imposed. Quite obviously the Board here concluded that disciplinary action was warranted, but that complete dismissal was not. The refusal to award back pay amounts to a reduction of the penalty from dismissal to a period of suspension.

Such is the case here. While the Board specifically found that Grimes should be disciplined, mitigating circumstances made dismissal excessive, and a lesser penalty appropriate. The Court can not say that such decision was wholly baseless, or without reason so as to require reversal of the Board's decision.

Although Grimes in his complaint did not attack the proceedings before the Adjustment Board, in his response to the Railroad's motion he argues that the proceedings before the Board were tainted by the Union's breach of its duty of fair representation. While the Court notes that in some cases the breach of the duty of fair representation may undermine the arbitral process, *see e.g. Miller v. Gateway Transportation Co.*, 616 F.2d 272 (7th Cir.1980) the Court is not of the opinion that this is such a case. Here, Grimes' grievance was processed by the Union, and although there appears to be some question as to the adequacy of his representation at the initial discharge hearing, it is clear from the record filed by the Board that they were aware of these shortcomings. It is also important to note that the Board did find in Grimes' favor albeit not to the degree that either he or the Union sought.

Looking at the record as a whole, as well as the numerous exhibits made part of the Board's record of decision, the Court can not say that the Union breached its duty of fair representation so as to undermine the fairness of the arbitral process. That being the case the Court finds that the motion for summary judgment as to the appeal of the decision of the National Railroad Adjustment Board should be GRANTED

Based upon the foregoing the Court hereby ORDERS that:

(1) Summary Judgment as to pleading paragraph One (1) of the complaint be and hereby is GRANTED in favor of the defendant Railroad.

(2) Summary Judgment as to pleading paragraph Two (2) of the complaint be and hereby is GRANTED in favor of the defendant Union.

(3) Summary Judgment as to pleading paragraph Three (3) of the complaint with respect to the defendant Union is GRANTED in favor of the Union. With regard to the defendant Railroad the motion is GRANTED in part and DENIED in part. Plaintiff may pursue against the Railroad only his claim of retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*

(4) Summary Judgment as to pleading paragraph Four (4) of the complaint is GRANTED in favor of both the defendant Railroad and the defendant Union.

(5) Summary Judgment as to pleading paragraph Five (5) of the complaint is GRANTED in favor of the defendant Railroad.

IT IS SO ORDERED.